**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Albert H. HOLMES, Defendant-Appellant.**

**No. 16255.**

United States Court of Appeals Seventh Circuit.

Nov. 20, 1967.

Rehearing Denied Jan. 2, 1968.

Kenneth S. Jacobs, Jacobs & Spencer, Villa Park, Ill., for appellant.

Edward V. Hanrahan, U. S. Atty., Alan L. Adlestein, Asst. U. S. Atty., Chicago, Ill., John Peter Lulinski, Gerald M. Werksman, Mark W. Perrin, Asst. U. S. Attys., of counsel for appellee.

Before DUFFY, Senior Circuit Judge, and FAIRCHILD and CUMMINGS, Circuit Judges.

DUFFY, Senior Circuit Judge.

This is an appeal from a judgment of conviction for failing to report for civilian work at the Elgin State Hospital, Elgin, Illinois, in violation of Section 12, Universal Military Training & Service Act, 50 U.S.C.App. § 462.

The defense is unusual. Defendant does not question his classification as a conscientious objector. He makes no claim that he did report, for civilian work or otherwise, at the Elgin State Hospital. He does not deny that he repeatedly advised his Selective Service Board that he would not report for civilian work.[1]

The defendant urges four major arguments. First, the evidence produced by the Government was not legally sufficient to prove that the defendant did not report for civilian duty at the Elgin State Hospital. Second, the trial court erroneously admitted hearsay evidence. Third, his rights under the Fifth, Sixth, Thirteenth and Fourteenth Amendments to the Constitution of the United States were violated. Fourth, the procedural rights guaranteed by Matter of Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), and Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) were denied him.

Defendant waived a trial by jury and entered a plea of not guilty. At the trial, the entire Selective Service file of the defendant was received in evidence over the objection that the contents were hearsay.

Defendant urges that Government Exhibit B-61 should not have been received in evidence. This was an original typewritten letter from Selective Service Board 132, Morris, Illinois, addressed to Elgin State Hospital. The letter states that the defendant, Mr. Albert H. Holmes, was ordered to report on February 21, 1966, for civilian work at the hospital, and that he had stated his refusal to do so. The Local Board clerk makes a request that a statement be submitted (by the hospital) to that effect.

Appearing beneath the signature of the clerk of Local Board No. 132, in a different style of type, appears the notation "This office has no knowledge of the above-named ever appearing at this office for an interview." A stamp of the Local Board dated March 1, 1966, appears at the bottom of the face of Exhibit B-61. On the reverse side there appears the stamp "Received, Hospital Post Office, '66 Feb. 23, a. m. 8:39—Elgin State Hospital."

It is apparent that the hospital official, instead of sending a separate response to the inquiry of the Board, gave the information by the notation on the Board's original letter, that the hospital officials knew nothing of the defendant. If the defendant had reported to the hospital as ordered, the Board would have been so informed.

 The notation by the hospital was, in fact, a direct reply to the inquiry addressed to the Elgin State Hospital. The hospital stamp indicates clearly the Board's inquiry was received two days after the date of the inquiry. The stamp of the Local Board shows the reply from the hospital was received by the Board on March 1, 1966. The entire exhibit was properly placed in defendant's file. The authenticity and custody of the file was established by John T. Seigle, Assistant Chief of the Field Division of the Illinios Selective Service. This was

---

[1]. On February 21, 1966, the day he was ordered to report, defendant, in a letter in his own handwriting and over his signature, addressed to his Selective Service Board mentioned his obligations as a

Jehovah Witness and then stated: "* * * Therefore, I cannot accept the civilian work at Elgin State Hospital."

proper under Rule 44(c), Federal Rules of Civil Procedure (Rule 27 of the Federal Rules of Criminal Procedure makes Rule 44 of the Federal Rules of Civil Procedure applicable to criminal trials) and 32 C.F.R. 1606.35(a) which provides in part "Any officer or employee of the Selective Service System who produces the records of a registrant in court shall be considered the custodian of such records for the purposes of this section." United States v. Ward, 173 F.2d 628, 629 (2 Cir., 1949); Prohoroff v. United States, 259 F.2d 694, 695 (9 Cir., 1958), cert. den. 359 U.S. 907, 79 S.Ct. 583, 3 L.Ed.2d 572 (1959).

In La Porte v. United States, 300 F.2d 878, 880 (9 Cir. 1962), the notation "Did not report" made by an official of a state charitable agency upon Selective Service Form 153 was held admissible under the provisions of 28 U.S.C. § 1732, as an entry made in the regular course of business of the charitable agency.

In *La Porte,* at page 881, the Court also found the notation admissible as an official record of the Selective Service system under 28 U.S.C. § 1733, " * * * [S]ince those who observed and recorded defendant's failure to report acted as *ad hoc* officials of the Selective Service System." The Court also found an alternative ground of admissibility in the common law exception to the hearsay rule established for official statements, considering the officials of the charitable agency to be state or county officials.

■ We hold it was not error to have received defendant's selective service file into evidence. Pardo v. United States, 369 F.2d 922, 926 n. 7 (5 Cir., 1966); United States v. Borisuk, 206 F.2d 338, 340 (3 Cir., 1953); United States v. Ward, 173 F.2d 628, 630 (2 Cir., 1949). Furthermore, the items in that file postdating the time of classifying defendant 1–O (conscientious objector) would be admissible if individually considered under the Federal Official Records Act, 28 U.S.C. § 1732 and § 1733.

■ Since we have decided that the Selective Service File and Exhibit B-61

were admissible in the trial court, defendant's argument that his Sixth Amendment right to confront the witnesses against him was violated, is without merit.

■ We also hold that the evidence properly before the trial court was sufficient to establish beyond a reasonable doubt that the defendant failed to report to Elgin State Hospital on February 21, 1966, as had been ordered by the Board. There is no evidence inconsistent with this conclusion.

Defendant's claim under the Thirteenth Amendment is that compulsory civilian duty in peacetime violates the prohibition against involuntary servitude contained in the Thirteenth Amendment. We reject this contention for the following reasons.

■ In Badger v. United States, 322 F.2d 902 (9 Cir., 1963), cert. den. 376 U.S. 914 (1964), a Jehovah Witness had been classified 1-O. He argued that compulsory civilian duty in peacetime violates the prohibition of involuntary servitude in the Thirteenth Amendment. In rejecting the defendant's argument, the Court quoted from its earlier decision in Howze v. United States, 272 F.2d 146, 148 (9 Cir., 1959)—"The appellant also urges that the Thirteenth Amendment to the Constitution prohibits a civilian labor draft in peacetime, absent a national emergency. He mis-states the case. Compulsory civilian labor does not stand alone, but it is the alternative to compulsory military service. It is not a punishment, but is instead a means for preserving discipline and morale in the armed forces. The power of Congress to raise armies and to take effective measures to preserve their efficiency, is not limited by either the Thirteenth Amendment or the absence of a military emergency."

■ We find ourselves in agreement with the statement of the Court of Appeals for the Ninth Circuit as hereinbefore quoted.

■ The defendant also contends that Congress created an arbitrary and

discriminatory classification in violation of the Fifth and Fourteenth Amendments by requiring a conscientious objector to perform civilian work while other persons eligible for the Armed Service, but deferred for various reasons (Selective Service classifications 1-S, 1-Y, 2-S, 3-A, 4-A, 4-F, 5-A) have not been required to perform civilian work in lieu of induction. The equal protection clause, as provided in the Fourteenth Amendment, or implied in the due process clause of the Fifth Amendment, Bolling v. Sharp, 347 U.S. 497, 499, 74 S.Ct. 693, 98 L.Ed. 884 (1954), requires only that all legislative classifications have a reasonable basis and that everyone placed within a classification be treated similarly. Goesaert v. Cleary, 335 U.S. 464, 69 S.Ct. 198, 93 L.Ed. 163 (1948); Skinner v. State of Oklahoma ex rel. Williamson, 316 U.S. 535, 540–542, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942).

The defendant also argues that, as a minor, the procedural rights guaranteed by Matter of Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) and Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) were denied him. This argument is based on the fact that the clerk at the Selective Service Local Board 132, Morris, Illinois, did not warn him of his Constitutional rights before he made any incriminating statements indicating he would not report for civilian duty. This argument misses the whole point of Gault and Miranda. The Miranda decision was concerned with custodial interrogation. 384 U.S. at page 444 of Miranda, 86 S.Ct. at page 1612 the Court says, " * * * [T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."

■ The statements made by Holmes to the clerk at the Local Board 132 in no way come within the scope of this rule. First, Holmes was not being interrogated. He offered the incriminating statements. He was not asked to make them. Second, the clerk at the Selective Service office is not a law enforcement officer. Third, Holmes was not under arrest or denied his freedom.

■ *Gault*, supra, 387 U.S. at page 13, 87 S.Ct. at page 1436, is also inapplicable. It is not concerned with "procedures or constitutional rights applicable to the pre-judicial stages of the juvenile process." It relates only "to the proceedings by which a determination is made as to whether a juvenile is a 'delinquent' as a result of alleged misconduct on his part * * * *" The defendant makes no claim that any of the specific rights denied *Gault* at his trial were denied him. He merely claims that because the court admitted the evidence in question, *Gault* precludes his conviction. This argument is not worthy of further comment.

The Judgment of the District Court is Affirmed.

FAIRCHILD, Circuit Judge (dissenting).

It is quite clear that defendant did not report, and that in terms of ultimate results, no injustice is done by affirming the judgment. I fear, however, that in reaching such conclusion we are applying too lax a standard to the sufficiency of the government's case, and are impermissibly leaning on the defendant's failure to testify.

Government Exhibit B–61 is described in the majority opinion. The anonymous and vague notation at the foot of the letter is the keystone of the prima facie case. If that notation is inadmissible to prove failure to report, the government failed.

It is readily inferable that the notation was placed on the letter by someone at Elgin State Hospital for the purpose of replying to the inquiry of the board. There is no clew, however, to the identity

of the writer, the position he holds at the hospital, or his opportunity to be aware of the fact he negated. Such lack would not render the entry inadmissible if it qualified under 28 U.S.C. sec. 1732(a), but I cannot agree that this entry is qualified. Section 1732(a) relates to entries recording an act, transaction, occurrence, or event, if made in the regular course of business, and if it was the regular course of such business to make the record at the time of the event or within a reasonable time thereafter.