**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Thomas Mitchell GOODMAN, Defendant-Appellant.**

**No. 18007.**

United States Court of Appeals,
Seventh Circuit.

Dec. 11, 1970.

Kenneth S. Jacobs, Villa Park, Ill., for appellant.

William J. Bauer, U. S. Atty., Richard F. Sprague, Asst. U. S. Atty., Thomas A. Foran, U. S. Atty., Chicago, Ill., John Peter Lulinski, Asst. U. S. Atty., of counsel, for appellee.

Before SWYGERT, Chief Judge, KNOCH, Senior Circuit Judge, and PELL, Circuit Judge.

KNOCH, Senior Circuit Judge.

Defendant-appellant, Thomas Mitchell Goodman, was indicted on a charge of violating Title 50, Appendix, United States Code, § 462, in that being a male required to register under the Universal Military Training and Service Act, and being a registrant at Local Board 189, Rock Island, Illinois, classified as I–O, (conscientious objector available for civilian work contributing to the mainte-

nance of the national health, safety or interest) he refused to report for civilian work contributing to the national health at the Chicago State Hospital as ordered by the Local Board in lieu of induction into the Armed Services.

In a bench trial, Appellant having waived trial by jury, Appellant was found guilty and committed to the custody of the Attorney General for confinement for a period of two years. However, execution of the sentence was suspended, Appellant placed on probation for three years and ordered to do work of national importance in the same category as previously offered to him.

It is Appellant's view that the order to report for civilian work was void as improperly issued. He asserts that the Local Board never actually made the requisite findings that such appropriate civilian work was available for him; that the various classifications were arbitrarily issued without a basis in fact; that the Board arbitrarily refused to reopen his classification and denied him due process and effective assistance of counsel.

The Appellant's Selective Service File introduced in evidence at the trial shows he was born January 12, 1942, and initially registered on February 23, 1960 when he listed his occupation as "fulltime student".

On April 2, 1963, he filed a Classification Questionnaire, (SSS Form 100) in which he indicated that he was not a Conscientious Objector. He said he was employed 58 hours per week as a metal pourer for Quad City Die Casting Company.

He was classified I-A (Registrant available for military service) on May 15, 1963.

On December 7, 1964, Appellant filed a current Information Questionnaire (SSS Form 127) showing that he was married and the father of a child. His occupation was shown as "factory worker" for Farmall Works. Under "other occupational qualifications including hobbies, you possess" he listed "minister".

On December 14, 1964 the Board classified him III-A (extreme hardship deferment, or registrant with a child or children.)

March 28, 1966, Appellant filed another current Information Questionnaire (SSS Form 127) indicating he was married and the father of two children, still employed as a factory worker at Farmall Works. No other occupational qualifications or hobbies were listed.

Another SSS Form 127 filed June 24, 1966, showed Appellant to have been divorced and no longer living with his wife or children. He said he was employed as an assembler with International Harvester Company. He listed no other occupational qualifications or hobbies.

On the basis of this data Appellant was reclassified I-A and SSS Form 110 notification sent him July 13, 1966.

The Board did not hear from Appellant until September 1, 1966, after expiration of the 30 days' appeal time set out in Form 110. Under date of August 31, 1966, Appellant wrote explaining his delay by reference to emotional problems attendant on his divorce. He said nothing about a III-A classification, but attached to Appellant's letter of August 21, 1966 was a 6-page document entitled "Request to Appeal and Consider Reclassification of Registrant" in which Appellant stated (giving details) that he had been training for the Jehovah's Witnesses Christian Ministry for three years, spending monthly 20 to 30 hours in study meetings plus travel time of 8 to 9 hours, and about 11½ hours in actual house to house and platform preaching; that he was baptized on July 24, 1964 by an ordained Minister. He enclosed supporting letters from the Presiding Minister, Rock Island Congregation of Jehovah's Witnesses; a Theocratic Ministry School Servant, Rock Island Congregation of Jehovah's Witnesses; and others attesting to Appellant's dedication and devotion and the

time he spent in his work for the Congregation, plus a letter from Watchtower Bible and Tract Society of New York, Inc., listing Appellant as a Book Study Conductor.

September 2, 1966 the Board notified Appellant that after review they had decided not to reopen his classification which remained I–A and that he was expected to report for physical examination September 6, 1966.

Appellant wrote under date of September 5, 1966 stating he had new evidence and requesting personal appearance before the Board.

On September 6, 1966, he was physically examined and found acceptable for the Armed Forces.

Two days later, the Board granted Appellant a personal appearance set for October 6, 1966, advising him to submit his new evidence in writing in advance so that the Board members might study it.

Under date of September 15, 1966 Appellant wrote a letter to the Board stating that he believed his proper classification was as a Minister of Religion. He described himself as having been duly ordained a minister by the governing body of Jehovah's Witnesses and his ministry as his regular and customary vocation. He also included a "Certificate for Servant in Congregation" from the Watchtower Bible and Tract Society of New York, Inc. (the governing body of Jehovah's Witnesses) naming Appellant as a duly ordained minister, then officiating as assistant presiding minister of the Rock Island, Illinois, Congregation serving as Book Study Conductor and also engaged in preaching as a missionary evangelist.

At the personal appearance, however, the Board retained Appellant in the I–A classification, noting that Appellant was working to meet his obligations and that they did not think being a minister was his primary vocation.

Under date of October 17, 1966, Appellant wrote the Board, appealing its decision. He stated further that he was now serving as Congregational Book Study Conductor, holding personal home Bible studies and serving in other functions. He added that the Congregation was short of qualified servants. He explained that he planned to extend his ministry when possible but that he was unable yet to do so because of heavy debts, child support payments and his own necessities of life. No reference was made to a possible III–A classification for hardship.

The case was sent to the Appeal Board which on February 3, 1967 denied reclassification.

Appellant on February 9, 1967 requested a conscientious objector's form, which he filed on February 16, 1967. He listed his occupations as shown below, although the instructions called for all occupations or types of work, other than as a student in school or college, whether for monetary compensation or not:

| | | |
|---|---|---|
| 1961–1963 | Stock Chaser | Service Rubber Co. |
| 1963 | Hot Metal Carrier | Quad City Die Casting Co. |
| 1963–1967 | Assembler | International Harvester Co. |

He did state under "relationships with organizations" that he was a minister with Jehovah's Witnesses engaging in preaching.

He also filed a current SSS Form 127 listing no dependents and showing employment presently and from June 21, 1963 as assembler for International Harvester and Farmall Works. No other occupational qualifications or hobbies were listed.

The Board denied reclassification on March 2, 1967 and on March 6, 1967, Appellant requested a personal appearance, which was scheduled for April 6, 1967.

The Report on Appellant's personal appearance indicates that he said he would refuse induction and an order for civilian work even in a hospital whose patients were not returning to war but to civilian life. His reason was that he could not then devote time to his voca-

tion of preaching God's word, despite the arguments of members of the Board respecting the humanitarian nature of the proffered work.

On April 6, 1967 the Board reclassified Appellant I–O, conscientious objector available for civilian work contributing to the maintenance of the national health, safety, or interest.

Under date of April 24, 1967, the Board's acting Chief Clerk wrote the Illinois State Director of Selective Service at Springfield asking for copy of the list of agencies approved for employment of conscientious objectors.

On May 3, 1967, Appellant returned completely blank the Special Report for Class I–O Registrants (SSS Form 152, for listing qualifications and job experience) which had been sent him by the Board. In a covering letter he said that his refusal to do civilian work in the national interest reflected the position of positive neutrality that Jehovah's Witnesses take in any nation of the world where they live. His file went to the State Director for review and advice.

May 5, 1967, the State Director advised submission of three types of work to Appellant and allowance of 10 days for him to notify the Board whether he would perform one or refuse.

The Board did that on May 8, 1967. Appellant again refused to perform work on the basis of his ministry and position of neutrality, and the file again went to the State Director.

Pursuant to the State Director's instructions, the Board notified Appellant of a meeting to be held on June 1, 1967, with the Board and the Supervisor of Division II appointed as the State Director's representative to offer assistance in reaching an agreement.

That meeting was held without reaching any agreement with Appellant respecting civilian work in lieu of induction. The records show that Appellant was fully advised. He commended the Board members for their patience and cooperation but declined to accept the civilian work.

There is also an indication that he explained the difference between an ordained minister, a pioneer minister and his current status. He said he was not a pioneer minister but would study vacation pioneer ministry in July.

Appellant lays great stress on the fact that no formal vote was recorded at this meeting on June 1, 1967.

However, the same day the Clerk, writing for the Local Board to the Director of Selective Service via the State Director, reported Appellant's refusal and continued:

"This local board therefore requests your approval of the issuance of an order * * * directing this registrant to perform hospital work at the Chicago State Hospital. * * * Such work is available and is deemed appropriate for the registrant to perform".

On June 15, 1967, the Deputy State Director reported to the Director of Selective Service at National Headquarters in Washington, D. C. that a meeting had been held with Appellant on June 1, 1967; that Appellant had refused to agree on a type of civilian work for him to perform in lieu of induction; that the Local Board had determined hospital work as appropriate and requested approval of the Board's issuance of an order directing Appellant to perform that work at the Chicago State Hospital where work of that type was available and considered by the Board to be appropriate for Appellant to perform.

The proposed civilian work order was approved on July 7, 1967 in Washington and notification sent by the State Director on July 10, 1967.

An order to report for civilian work on July 24, 1967, signed by a member of the Board, was issued July 13, 1967 to Appellant.

On July 18, 1967, the Board received a letter from Appellant in which he stated he had been enrolled by the Watchtower Society to serve as a vacation pioneer minister for the entire month of July. The supporting letter from the Watch-

tower Society which he enclosed stated that he was being enrolled for the period from July 18 to 31st. He was, however, invited to apply for further periods of such service if he could arrange to do so. He said he was providing the Board with this information to show that he was continuing to serve his vocation as a minister and to enlarge his share in it as much as possible. He added that he had assumed the obligation, without saying when, of contributing $20.00 per week to the support of his elderly grandparents and to providing transportation for them as they owned no automobile and neither of them drove.

The record contains an SSS Form 119 "Report of Oral Information" signed by someone not identified on the form but referred to by counsel in the trial below as a secretary at the Local Board. The form indicates that the signer on July 18, 1967 telephoned three named members of the Board, read them the Appellant's letter received that day and the enclosed letter from the Watchtower Society, and noted their reactions as follows:

"The local board indicated it was clear in their minds that the registrant would be going to Vacation Pioneer activities from July 18 to July 31 and that the registrant indicated his vocation as a minister. "It was the feeling of the members that the information submitted regarding the dependency of his grandparents was a little late in arriving for consideration since he had already been ordered for civilian work. Also, based on the information provided, his absence would not be a hardship for the grandparents".

Accordingly, the Acting Chief Clerk of the Board notified Appellant under date of July 21, 1967 that the Board had decided not to reopen his classification and he was expected to report for civilian work on July 24, 1967 as ordered.

Appellant considers that a serious irregularity had occurred when the views of only three of a possible five member

Board were sought and then only by telephone with no formal meeting and recorded vote.

The file includes a report that Appellant appeared at the office of the Board on July 24, 1967 but refused to report for work at the Chicago State Hospital as instructed on the ground that he could not accept civilian work and maintain his position of neutrality.

On August 2, 1967 the Board received a letter dated July 31, 1967 from the personnel office of the Chicago State Hospital stating that Appellant had not reported for work and under date of August 29, 1967 the Deputy State Director advised the United States Attorney that the Director of Selective Service had determined that Appellant should be reported to him for prosecution.

Appellant, as indicated, lays great stress on the absence of any record of a formal vote which, Appellant argues, shows that there was no critical exercise of administrative judgment to sustain the later issue of the work order over the signature of one member of the Board. Appellant contends that the absence of any entry on page 8 of SSS Form 100 at the meeting of June 1, 1967, or later, to show a Board decision (either conditionally in advance or after receiving authorization from the National Director) whether specific civilian work was available and appropriate to perform or whether the Board authorized issuance of a specific order, cannot be remedied in this case by the presumption of regularity attaching to official proceedings and acts of the Board. In United States v. Crowley, 4 Cir., 1968, 405 F.2d 400, cert. den. 394 U.S. 904, 89 S.Ct. 1011, 22 L.Ed.2d 215 and Davis v. United States, 5 Cir., 1968, on petition for rehearing 402 F.2d 513, cert. den. 394 U.S. 908, 89 S.Ct. 1019, 22 L.Ed.2d 219 the Court viewed the proceedings before the Board as a whole and did not merely check for specific formal resolutions and orders. The government's view is that as the local boards are largely made up of unpaid laymen volunteers their records need not be kept with

the meticulous care of court records. Doty v. United States, 8 Cir., 1955, 218 F.2d 93, 95.

Appellant considers that any presumption of regularity is rebutted by the testimony of the Clerk of the Board who stated that no meeting was held after authorization of an order to report for hospital work, and who testified further that there was no vote or resolution authorizing one member to sign for the Board at the meeting on June 1, 1967. Taking single questions and answers out of context this does at first appear to be the case. However, when one reads the entire testimony of the Clerk it is apparent that the Clerk was referring only to formal recorded votes and resolutions as shown in the record from which he was reading. He was not confessing in open court that he had sent the letter of June 1, 1967 to the Director of Selective Service without authorization, wilfully misrepresenting the facts by stating in that letter that the Board requested approval of an order to be issued by it under 32 CFR § 1660.20(d)* directing Appellant to perform work at the Chicago State Hospital, work of that type being available and deemed appropriate for Appellant to perform. The District Judge who had the advantage of seeing and hearing the witness evidently came to the same conclusion.

■■ A meeting of the Board need not be held after receipt of authorization; the requisite critical exercise of its administrative judgment can be made by the Board prior to authorization and subject to subsequent authorization and notice. Davis v. United States, 5 Cir., 1968 on petition for rehearing, 402 F.2d 513, cert. den. 394 U.S. 908, 89 S.Ct. 1019. We are satisfied from a study of the whole record of the Board's proceedings that the sole point of the meeting on June 1, 1967 was to decide on civilian work for Appellant who would be or-dered to that type of work if his voluntary agreement was not secured. Appellant had given warning before and at the meeting that he would not so agree. The dispatch of the letter the same day bolsters the conclusion that the decision was made at that time. Although the Board was remiss in failing to make a record of its decision, we cannot agree that the order to report for civilian work was thus rendered a nullity.

Appellant contends that there was no basis in fact for the Board's refusal or failure officially to consider the request implied in his letter received July 18, 1967 for classification in III–A as a registrant whose induction into the armed forces would result in extreme hardship to relatives dependent upon him for support.

Appellant argues that had all five Board members met together, the two not called on the telephone might have persuaded the other three that Appellant had made out a *prima facie* case for reopening his classification on the basis that he had "assumed the obligation of caring" for his grandparents, his grandfather being 70 years of age, and that he was paying them $20 per week and providing them with transportation.

■■ As the government points out, there is no showing that these were new facts timely brought to the Board's attention within 10 days of a change in circumstances pursuant to 32 CFR § 1625.1(b); that these facts, if true, would entitle Appellant to re-classification and that if occurring after the issue of the order, these facts arose from circumstances beyond Appellant's control pursuant to 32 CFR § 1625.2(b). There was no statement of facts to make a prima facie showing of extreme hardship, as noted in the record made of the call to the three members who expressed their views. We need not discuss

* 32 CFR § 1660.20(d) provides that if, after meeting with the registrant, the local board and the registrant are still unable to agree upon a type of civilian work to be performed by the registrant in lieu of induction, the local board, with the approval of the Director of Selective Service, shall order the registrant to report for civilian work.

whether the stated facts if brought to the attention of the Board prior to issuance of the order (as occurred in some of the cases on which Appellant relied) might have merited further investigation by the Board. *e. g.*, United States v. Freeman, 7 Cir., 1967, 388 F.2d 246. Absent a showing that the request was timely, that it was based on circumstances beyond Appellant's control, that it presented a prima facie case, Appellant was not prejudiced by failure of the Board to meet formally. Cf. Battiste v. United States, 5 Cir., 1969, 409 F.2d 910, 914–915 (Judgment vacated on other grounds 397 U.S. 48, 90 S.Ct. 812, 25 L.Ed.2d 35) which distinguishes United States v. Walsh, D.Mass.1968, 279 F. Supp. 115 on which Appellant relies, where registrant's request for re-opening preceded the mailing of an order to report.

■ We agree with the government that the Board's letter of September 2, 1966 advising Appellant that his file had been reviewed at a meeting of the Board on September 1, 1966 and that his classification was not reopened was a sufficient notification that the information he had submitted did not warrant re-opening the classification. In any event he was again classified I–A on October 6, 1966 and a new SSS Form 110 mailed October 10, 1966 which gave him a right to appeal, of which he availed himself.

■ We see in the record ample support for a finding that there was a sufficient basis in fact for refusal by the Local Board and, in its turn, by the Appeal Board, to grant Appellant a classification of IV–D, minister. A review of his own statements down the years shows that, whatever his sincere aspirations for the future, his ministerial duties actually were only avocational and limited to those of a part-time helper. Even the material submitted after the order to report showed him to be about to engage in the duties of a Pioneer Minister for two weeks only. See Robertson v. United States, 5 Cir. en banc, 1969, 417 F.2d 440 (where the Regis-

trant had been appointed a vacation Pioneer Minister for two months) reversing the earlier Fifth Circuit 2–1 decision (404 F.2d 1141) which had set aside a conviction for failure to report for civilian work. Appellant in our case had been and evidently expected for an indefinite period to be engaged in full-time, secular employment. He did not demonstrate that the ministry was his customary vocation. United States v. Isenring, 7 Cir., 1969, 419 F.2d 975, 979, cert. den. 397 U.S. 1024, 90 S.Ct. 1260, 25 L.Ed.2d 533.

We agree that polling individual Board members by telephone until a majority of votes has been received in one direction or the other, represents a poor procedure. However the sole new fact adduced with reference to the IV–D classification, was that Appellant would be acting as a Pioneer Minister for 13 days, which could make no difference to the Board's finding on the data previously submitted.

■ We see no merit in Appellant's belated complaint respecting the Board's reclassification of him on July 7, 1966 from III–A to I–A following Appellant's notification on June 24, 1966 that he had been divorced from his wife and that his children were no longer living with him. The notice of this reclassification was mailed July 13, 1966, on an SSS Form 110 which advised appellant of his right to seek personal appearance and appeal with 30 days. He sought neither with respect to loss of his III–A classification, confining his efforts to a possible IV–D classification. He submitted no information as to the extent, if any, of his contributions to the support of his children or of any hardship they would suffer through his induction.

In this court Appellant now asserts that after his divorce he remained solely responsible for the support of his children. That data was not timely presented to the Board through the administrative channels available to him. United States v. Crowley, 4 Cir., 1968, 405 F.2d 400, 402; United States v. Smogor, 7

Cir., 1969, 415 F.2d 296, cert. den. 396 U.S. 972, 90 S.Ct. 460, 24 L.Ed.2d 440.

■ Appellant sees a want of due process in denial of the right of representation by counsel before the Board. The question has been considered by this Court and decided adversely to Appellant. Proceedings before the Local Board are administrative and not adversary or criminal in nature. United States v. Holmes, 7 Cir., 1967, 387 F.2d 781, 785, cert. den. 391 U.S. 936, 88 S. Ct. 1835, 20 L.Ed.2d 856; United States v. Mientke, 7 Cir., 1967, 387 F.2d 1009, cert. den. 390 U.S. 1011, 88 S.Ct. 1261, 20 L.Ed.2d 162.

■ Through letters from the Board, Appellant did know of the existence of governmental appeal agents. He complains that none was assigned to confer with him and that the first appearance of such an agent according to the record was at the conference on June 1, 1967, which he characterizes as "too little, too late". Prior to March 6, 1967, the Board was required at most to post the names of government appeal agents and only since then to notify each registrant in Classes I–A, I–A–O or I–O that a government appeal agent was available to advise him of his rights. Rusk v. United States, 9 Cir., 1969, 419 F.2d 133, 135. In United States v. Primous, 7 Cir., 1970, 420 F.2d 33, 35, cert. den. 397 U.S. 1053, 90 S.Ct. 1395, 25 L.Ed.2d 669, this Court held that a notice similar to that sent to Appellant was sufficient.

■ Appellant also asks us to reconsider the rulings in United States v. Holmes, 7 Cir., 1967, 387 F.2d 781, 784, cert. den. 391 U.S. 936, 88 S.Ct. 1835, and to hold that the order to report for civilian work in lieu of induction violates the Thirteenth Amendment's prohibition against involuntary servitude. We adhere to our position in Holmes. See also O'Connor v. United States, 9 Cir., 1969, 415 F.2d 1110, 1111 and cases there cited, cert. den. 397 U.S. 968, 90 S.Ct. 1002, 25 L.Ed.2d 263.

After careful consideration of these and all other arguments advanced on behalf of Appellant, singly or as a whole, we are satisfied that the judgment of the District Court must be affirmed.

The devoted efforts of Messrs. Jacobs and Spencer, Mr. Kenneth S. Jacobs of counsel, of the Illinois Bar, who represented Appellant as Court-appointed counsel with skill and ingenuity are greatly appreciated by the Court.

Affirmed.