**George Winston HALL, Defendant-Appellant,**

v.

**UNITED STATES of America, Plaintiff-Appellee.**

**No. 18409.**

United States Court of Appeals, Seventh Circuit.

Feb. 5, 1971.

Jack N. Eisendrath, Milwaukee, Wis., for appellant.

David J. Cannon, U. S. Atty., Richard P. Broder, Asst. U. S. Atty., Milwaukee, Wis., for appellee.

Before SWYGERT, Chief Judge, MAJOR, Senior Circuit Judge, and KERNER, Circuit Judge.

MAJOR, Senior Circuit Judge.

Defendant was charged by indictment with a violation of the Military Selective Service Act of 1967, Sec. 462, Title 50, App., by wilfully and knowingly refusing to proceed from Oneida County Local Board 52, Rhinelander, Wisconsin, to the place of employment for civilian work in Bellin Memorial Hospital, Green Bay, Wisconsin, after having been ordered to do so by the Board. He was tried to a jury, and upon its verdict of guilty the court entered judgment from which this appeal comes.

It is pertinent to note that at an early stage in the proceeding Mr. Jack N. Ei-

7. Rector, *supra*, fn. 4, 191 F.2d p. 332, quoting from American Surety Co. v. Standard Asphalt Co. (5th Cir., 1935), 75 F.2d 1, 3.

sendrath, an attorney of Milwaukee, Wisconsin, was appointed to represent defendant. When the case was called for trial on January 19, 1970, defendant advised the court that he had discharged his court-appointed attorney and would proceed without legal representation. He was warned by the judge of the hazard of such action, but he persisted in so doing. In this court, at defendant's request, the same attorney was appointed to represent him, and this he has done in a very able manner considering the handicaps with which he was faced, due in part to the fact that defendant had chosen not to be represented by an attorney during the trial.

Defendant on brief states the contested issues:

"1. Was the Local Board Order assigning defendant-appellant to alternative service work at Bellin Memorial Hospital, a Methodist institution, a violation of the First Amendment of the United States Constitution?

"2. Did the Local Board's requirement that defendant-appellant serve two years at the Methodist-controlled hospital, or suffer a criminal penalty, constitute involuntary servitude contrary to the 13th Amendment?

"3. Did the failure of the Director of Selective Service to comply with Local Board Memorandum No. 64 prejudice the defendant-appellant?

"4. Did the assignment of defendant-appellant to work at a Methodist hospital violate 32 C.F.R. 1660.-1(a) (2)?"

In view of the posture of the case as presented here, we think it sufficient to state the facts as embodied in a stipulation entered into previous to the trial between defendant and the government, at a time when defendant was represented by counsel. Defendant at the trial agreed that this stipulation might be introduced. It reads:

"Defendant, George Winston Hall, was classified IV-D, ministerial classification, on August 3, 1965, by Local Board 52, Selective Service System, Rhinelander, Wisconsin. On November 15, 1967, defendant advised his local board that he was no longer a Pioneer minister of Jehovah's Witnesses and was pursuing secular employment. The local board classified defendant as a conscientious objector, Class I-O, on January 16, 1968. Defendant appealed this classification to the State Selective Service Appeal Board. The Appeal Board affirmed his classification as I-O by a 4-0 vote on May 2, 1968. On July 30, 1968, defendant met with his local board to see if agreement could be reached between them as to the appropriate civilian work assignment for defendant. No agreement was reached. The Board then determined work at Bellin Memorial Hospital to be appropriate. The Board later authorized the issuance of an order directing defendant to report to Bellin Memorial Hospital in Green Bay on November 18, 1968."

As the statement of contested issues apparently recognizes, there is no issue here but that defendant was properly classified I-O, a conscientious objector. The trial court early during the trial so held as a matter of law. Even so, the main thrust of defendant's position, as shown by his lengthy argument to the jury, was that he was entitled as a minister to IV-D classification. The court, quite leniently we think, permitted this argument on defendant's representation that he thought the I-O classification was unlawful and, therefore, that his refusal to obey the order was without any wilful intent. Defendant testified, "Therefore, I could not feel that, in myself, that this was a lawful order. I could not bring myself to believe it; and so, I would not submit to it," and " * * * if I disobeyed a valid legal order, it was with the understanding that it was unlawful and should not conscientiously be obeyed because it was in violation of my rights as a minister."

At no point in the proceeding before the Board or in his argument to the jury did defendant claim that he refused to obey the order because of the reli-

gious affiliation of the hospital to which he was assigned to do civilian work. Not only did he refuse to obey the order of the Board, but he informed it that he would not accept work at any of the alternative places suggested.

On March 31, 1968, defendant submitted over his signature a completed S.S. Form 152 (registrant's information sheet regarding preference, aptitudes and qualifications for alternative service). On the form he indicated that he was qualified for and offered to perform *only one form* of alternative service, "a ministerial work as set forth in the Holy Bible and in conjunction with and under the direction of the Watchtower Bible & Tract Society [Jehovah's Witnesses], for God's praise and for free benefit to the public."

Defendant was offered alternative service as a conscientious objector by letter of May 29, 1968, from his Selective Service Board as follows:

"Hospital Work"—
Bellin Memorial Hospital
Green Bay, Wiconsin
(Methodist affiliated)

"Institutional Work"—
Trempeauleau County Hospital
Whitehall, Wisconsin

"Maintenance Work"—
Jefferson County Hospital
Jefferson, Wisconsin

In a letter to the Board under the date of June 7, 1968, defendant wrote, "I have received your letter of May 29 offering three kinds of civilian work deemed suitable for assignment to me out of consideration of my conscience. * * * In speaking for myself, I must say that none of the types of work suggested for me are found suitable in my own consideration, and I offer to perform none of these, while I continue to request your acceptance of what has an excelling value, both as God's work and as an incomparable public service, a sacred service to Jehovah my God."

The "Summary of Meeting" reporting a July 30, 1968 Board meeting, held for a conference with the defendant re-garding a possible agreement as to alternative service, shows that defendant reiterated his offer only to perform the above described work for Watchtower. He was directly asked if he would accept any of the three alternatives set out above. He replied in the negative and again stated he would only work for Watchtower. He also said he could suggest no other job.

An agent of the Federal Bureau of Investigation interviewed defendant on March 17, 1969. His report among other things states, "Hall stated that he is still maintaining the same attitude and that he would not comply with an order to report for civilian work if he received another one. He stated that he would not report to the Selective Service Board for assignment under any circumstances."

Defendant on brief states, "The system of assigning a registrant to alternative work in a hospital can easily be served by assigning one to a State or Federal Hospital. Every state and county has institutions available which fit into the requirements of the law. While such alternatives are available, it is not necessary to assign registrants to hospitals which have the taint of ineligibility." At another point he states, "Appellant contends that there were other available alternates to the Selective Service System, for work assignments."

■ Assuming that this argument is tenable, it is of no benefit to defendant upon the record before us. This is so because defendant did not refuse to comply with the Board's order because of the religious affiliation of Bellin Memorial Hospital. His refusal was based solely on his contention that the Board improperly placed him in a conscientious objector rather than in a ministerial classification, which he sought. He was *offered assignment to either of two* specified county hospitals, both of which he declined. He consistently adhered to the position that he would only accept an assignment to the religious sect with which he was affiliated. He finally stated that he would not report to the

Board for assignment under any circumstances.

Defendant admits that he raises the question of First Amendment violation for the first time on brief in this court but contends that under Rule 52 (b) of Federal Rules of Criminal Procedure, it is discretionary with this court to permit the issue to be considered. While doubtful that this is a proper case for the exercise of such discretion, in view of defendant's earnest argument we are disposed to give it consideration. Recognizing no doubt the deficiency in the record, defendant has attached to his brief a certified copy of the articles of incorporation of Bellin Memorial Hospital, which discloses that it is owned and operated by the Methodist Church. The articles disclose the manner in which the directors are to be elected, a majority of whom shall be members of that church. The purpose of the corporation is stated in the articles, "To establish, conduct and maintain a hospital, School of Nursing, and other hospital schools and issue diplomas to such as shall have completed the course of study and training prescribed by each school, which said business is to be carried on within the State of Wisconsin and especially within the County of Brown in said state."

Selective Service Regulation 1660.1 (32 C.F.R. 1660.1) in pertinent part provides:

"(a) The types of employment which may be considered under the provisions of section 6 (j) of title I of the Military Selective Service Act of 1967 [formerly known as the Universal Military Training and Service Act] to be civilian work contributing to the maintenance of the national health, safety, or interest, and appropriate to be performed in lieu of induction into the armed forces by registrants who have been classified in Class I-O shall be limited to the following:
* * *

"(2) Employment by a nonprofit organization, association, or corporation which is primarily engaged either in a charitable activity conducted for the benefit of the general public or in carrying out a program for the improvement of the public health or welfare, including educational and scientific activities in support thereof, when such activity or program is not principally for the benefit of the members of such organization, association, or corporation, or for increasing the membership thereof." (As amended July 4, 1967.)

In an attempt to escape the clear purport of the regulation, defendant argues that work in Bellin Memorial Hospital would be principally for the benefit of the members of the church or for increasing its membership. There was no proof that such would be the case and we think the asserted basis for such argument is little more than a figment of the imagination. It is a matter of common knowledge that the purpose of hospitals generally is the "maintenance of the national health," and they are engaged "in carrying out a program for the improvement of the public health or welfare" of those whom they serve, and this irrespective of all other considerations. The burden of proof would be heavy upon one who asserts any exception to this general purpose. Moreover, it must not be overlooked that defendant's refusal to report for work was not because of the religious affiliation of Bellin Memorial Hospital. He refused to report to other hospitals which had no religious connections, and finally took the position that he would not report for civilian work under any circumstances.

We are in accord with the decision of the Fifth Circuit in United States v. Crouch, 415 F.2d 425, based on a factual situation so similar to that here that the opinion reads as though it might have been written for this case. There, Crouch, a Jehovah's Witness, was convicted of refusing to comply with an order of the Board to report for work in the Southern Baptist Hospital of New Orleans. As in the instant case, he not only refused to comply with the order but unconditionally refused to perform

any kind of civilian work under the Act. The main contention on appeal was that the hospital to which he was ordered to work was owned and controlled by a competing religious sect, and that the order of the Board to report to that institution was illegal because it attempted to force him to aid another religious group and deprived him of his right to the free exercise of his chosen religion. After discussing and distinguishing numerous cases relied upon by the defendant, the court stated (page 429):

"The District Court found, and we agree, that a showing of mere ownership and control of the hospital by the Baptist Convention was insufficient to establish that the work performed by the hospital was of a religious nature. The Government proved that the work of the hospital, a non-profit corporation, is to care for the sick and afflicted. The record is devoid of any evidence that the institution is secular in its operation. There is nothing in the record from which it may be inferred that the hospital staff members, employees or patients must be of the Baptist faith, nor is there any showing that the Baptist religion is practiced in the hospital or that religious worship is imposed on its patients or employees."

In affirming the conviction, the court made a further statement highly pertinent to the instant case (page 430):

"The District Court in the present case was of the opinion that the defense was clearly an afterthought and that there was 'no indication that defendant would comply with any order issued to him by the board.' Appellant's constant wavering and his refusal to accept any work or type of work under the civilian work program persuade us to the same view."

█ No case is cited which supports defendant's argument that the Board's order constitutes involuntary servitude contrary to the Thirteenth Amendment. His contention on this point is based upon the Board's order which requires him "as a Jehovah's Witness, to work in a religiously controlled institution whose religion was not accepted by the appellant's religion." As this court has done before, we reject this contention. United States v. Holmes, 7 Cir., 387 F. 2d 781, 784, and United States v. Fallon, 7 Cir., 407 F.2d 621, 623.

Other issues raised by defendant involve nothing more than alleged technical defects in the procedure followed by the Board. They could not have been prejudicial to the rights of the defendant, particularly in view of the stipulation which was entered into and introduced in evidence with defendant's consent. They do not merit discussion.

The judgment appealed from is

Affirmed.