2. That counsel for the United States may prepare an appropriate judgment form.

**UNITED STATES of America, Plaintiff,**

**v.**

**Stephen KUEHNAU, Defendant.**

**No. 72-CR-64.**

United States District Court, E. D. Wisconsin.

Sept. 27, 1972.

David J. Cannon, U. S. Atty. by D. Jeffrey Hirschberg, Asst. U. S. Atty., Milwaukee, Wis.; for plaintiff.

Hayes, Peck & Gerlach by Curry First, Perry & First, Milwaukee, Wis., for defendant.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

The defendant is charged under the selective service laws with having failed to report for alternative civilian service as required by 50 U.S.C.App. § 456(j). He has filed several pretrial motions.

### I.

The defendant's first motion is to dismiss the indictment. He urges that the

alternative service provision is defective in that it violates the free exercise clause of the first amendment to the United States Constitution. The defendant concedes that 1st, 5th, 13th and 14th amendment challenges to the alternative service provision have been rejected repeatedly in the past. See Hall v. United States, 437 F.2d 1063 (7th Cir. 1971); United States v. Goodman, 435 F.2d 306 (7th Cir. 1970); United States v. Boardman, 419 F.2d 110 (1st Cir. 1969), cert. denied 397 U.S. 991, 90 S.Ct. 1124, 25 L.Ed.2d 398 (1970); O'Connor v. United States, 415 F.2d 1110 (9th Cir. 1969); United States v. Holmes, 387 F. 2d 781 (7th Cir. 1968); United States v. Hoepker, 223 F.2d 921 (7th Cir. 1955). He argues, however, that several recent decisions suggest a need for critical re-evaluation of these cases.

The defendant presents a fairly narrow issue. As a member of the Jehovah's Witnesses sect, he requested and received conscientious objector classification from his local selective service board. He claims religious opposition not only to war, but also to any compulsory alternative service. His objection is not to the work but to compliance with the selective service system. Because of his religious beliefs, he argues that forced labor under the alternative service provision conflicts with the free exercise of his faith. Without a compelling and overriding governmental objective in requiring alternative service, he contends, his religious beliefs must be held inviolate. He also contends that the previous decisions in this field do not show an adequate government interest under present circumstances. He charges that

"... the only justification in fact for peacetime alternative service is the vindictive impulse that such men should be subjected to dislocations and burdens similar to those who are drafted into military service."

The defendant relies on two recent decisions to support his proposition that the area needs thorough re-examination:

Wisconsin v. Yoder, 406 U.S. 205, 92 S. Ct. 1526, 32 L.Ed.2d 15 (1972); and Anderson v. Laird, 466 F.2d 283 (D.C. Cir., decided June 30, 1972). Both cases involved questions of the governmental interest necessary to compel affirmative action where the action involved a conflict with the exercise of religion or where the requirement itself tends to support religion.

In my opinion, both *Yoder* and *Anderson* are entirely distinguishable from the issue at bar. *Yoder* involved a conflict between a state compulsory education law and a religious sect's claim that full compliance with such a law would violate its religious beliefs. The Court found an impermissible interference with the exercise of first amendment rights. The state's goal in requiring attendance at school was deemed of lesser importance than the sect's religious rights. The primary objective in the selective service laws, however, is national defense, a matter of grave national interest. The sect in *Yoder* offered an alternative method of fulfilling the government's objective; the defendant in the case at bar has not done this.

*Anderson* involved a challenge to a military academy's mandatory chapel attendance rule. The court of appeals struck down the requirement on the grounds that it violated the establishment clause of the first amendment. Although one judge also considered the regulation in light of the free exercise clause, the case has a majority ruling only on the establishment question. Since the defendant's claim here is clearly on free exercise grounds, *Anderson* is not apposite.

The government's interest in national defense must be deemed superior to an individual's personal or religious opposition to military service. In Jacobson v. Massachusetts, 197 U.S. 11, 29, 25 S.Ct. 358, 362, 49 L.Ed. 643 (1905), the court said:

"[A person] may be compelled, by force if need be, against his will and without regard to his personal wishes

or his pecuniary interests, or even his religious or political convictions, to take his place in the ranks of the army of his country, and risk the chance of being shot down in its defense."

■ Alternative service, therefore, is simply a part of a congressional attempt to avoid conflicts. Under many decided cases, the government has sufficiently justified conscription for military duties; it is not necessary for the government independently to justify a less onerous alternative which is granted as a matter of legislative grace. United States v. Fallon, 407 F.2d 621, 623 (7th Cir. 1969). See also George v. United States, 196 F.2d 445, 450 (9th Cir. 1952), cert. denied, 344 U.S. 843, 73 S. Ct. 58, 97 L.Ed. 656 (1952); Kramer v. United States, 147 F.2d 756, 760 (6th Cir. 1945), cert. denied, 324 U.S. 878, 65 S.Ct. 1026, 89 L.Ed. 1429 (1945).

■ As long as the requirement of alternative service is uniformly applied to those who qualify for conscientious objector status, Congress' program is not constitutionally offensive.

In United States v. Boardman, 419 F. 2d 110, 112 (1st Cir. 1970), the court said:

". . . Congress may legitimately require alternate service to alleviate the unfairness which results if conscientious objectors continue to enjoy the fruits of civilian life while their fellow citizens are conscripted for onerous and sometimes hazardous duty."

■ It was appropriate for Congress to have adopted an alternative service technique; the Supreme Court has stated that the "central problem" in this area is one of "fairness." Gillette v. United States, 401 U.S. 437, 460, 91 S. Ct. 828, 28 L.Ed.2d 168 (1971). Furthermore, although the requirement of alternative service in the national interest may be disruptive to the conscientious objector's life, it is not the type of "disruption for the sake of disruption" that was found offensive in Hackney v. Tarr, 460 F.2d 575, 579 (4th Cir. 1972). The defendant does not succeed in making it offensive by supplying the adjective "vindictive."

■ I also reject the defendant's contention that alternative service can only be legitimately required during war or national emergency. The defendant does not challenge the government's right to draft for the military in peacetime. See United States v. Holmes, 387 F.2d 781, 784 (7th Cir. 1968); Howze v. United States, 272 F.2d 146, 148 (9th Cir. 1959). In view of the relationship between the conscription power and the alternative service provision, I hold that peacetime alternative service may lawfully be required.

I conclude, therefore, that the defendant's challenge to the indictment must fail. I believe it implicit in the foregoing that the defendant's request that the prosecution be required at trial to justify ordering Jehovah's Witnesses to civilian work should not be granted.

II

■ The defendant's second and third motions concern production of evidence favorable to the defendant and discovery and inspection. The government's brief states that the government has opened its entire file for the defendant's inspection. The defendant's brief confirms this, but requests granting of the motion as to those items listed in paragraphs 9 through 12 of the motion for discovery and inspection. The items requested in those paragraphs are equivalent to the materials sought in paragraphs 11 through 14 of a similar motion in United States v. Jepson, 53 F.R.D. 289 (E.D.Wis.1971), and there ordered to be produced. It is not likely that these items are present in the government's case file which has been made available; therefore, the motion will be granted as to them. As to all other materials, the motions need not be granted.

III

■ Finally, the defendant asks for an extension of time within which to file other motions to dismiss on the basis of information which may be acquired through discovery. I will grant ten

days for such motions, such time to run from the date of the government's compliance with the production requirements of this order. If the government has already complied, the time will run from the date of this order. The government is directed to inform the court, in writing, when it has fulfilled its obligations in this respect.

Therefore, it is ordered that the defendant's motion to dismiss the indictment be and hereby is denied.

It is also ordered that the defendant's motion for the production of evidence favorable to the defendant be and hereby is denied.

It is further ordered that the defendant's motion for discovery and inspection be and hereby is granted as to paragraphs 9 through 12 of said motion; in all other respects it is denied.

It is further ordered that the defendant's motion for extension of time to file other motions to dismiss the indictment be and hereby is granted in accordance with the provisions of part III of this decision.