UNITED STATES of America

v.

Robert Windsor KIDSON.

Crim. A. No. 6969.

United States District Court,
D. New Hampshire.

July 30, 1970.

David A. Brock, U. S. Atty., Concord, N. H., for plaintiff.

Edward Rudnitsky, Field & Rudnitsky, Boston, Mass., for defendant.

## OPINION

BOWNES, District Judge.

The defendant is charged with willful refusal to report to the civilian work assigned to him by his Local Board in violation of 50 U.S.C. App. §§ 456(j) and 462 (Supp. V 1969).

The defendant waived his right to a jury trial and the case was heard by the Court. I find the defendant not guilty.

## THE ISSUES

The defendant raises two main defenses: (1) that there was no basis in fact for denial of his claimed IV–D classification (ministerial exemption); and (2) that he was entitled to have the Local Board reopen his I–O classification to consider his III–A classification claim (hardship deferment).

## THE FACTS

The defendant was given a ministerial exemption and classified IV–D on October 17, 1963. He continued in that classification until April of 1968. On April 5, 1968, Major Davis, then Assistant Manpower Officer for the Selective Service System for the State of New Hampshire, wrote to the defendant's Local Board suggesting a review of the defendant's classification pursuant to 32 C.F.R. 1625.3(a). After receiving Major Davis' letter, the Local Board promptly wrote the defendant and asked him to furnish it, within five days, with details regarding his current status in the Jehovah's Witnesses organization. Ex. 1–9. The defendant replied to this letter on April 16th, and also enclosed a letter from the presiding minister of the Jehovah's Witnesses Congregation in Newburyport, Massachusetts. Ex. 1–10 and 11. On May 13, 1968, the defendant was classified I–A by his Local Board.

The defendant duly appealed this classification and appeared personally before the Board on June 10, 1968. At that time, the defendant submitted to the Board a written statement of the time that he devoted to the ministry and also a "Certificate For Servant In Congregation" from the Watchtower Bible and Tract Society of New York. Ex. 1–16, 16A. On July 24, 1968, the defendant was classified I–O by the State Appeal Board by a vote of 4 to 0. No reason was stated by the Appeal Board for its I–O classification.

On December 17, 1968, the Local Board received a letter from the defendant asking it to reopen his case and requesting a III–A classification based on extreme hardship because his wife's physical condition was such that she could not support herself. Ex. 1–35 and 37. The Board refused to reopen the de-

fendant's classification. The defendant was granted another personal appearance before the Board and met with it on February 13, 1969. The records of that meeting reveal that the defendant told the Board that, under no circumstances, would he accept civilian work in New Hampshire or anywhere else in the country. Ex. 1–42.

On April 2, 1969, the defendant was ordered to work at the Mary Hitchcock Memorial Hospital in Hanover, New Hampshire. He refused to obey and this prosecution followed.

### FINDINGS AND RULINGS

I first consider whether or not there was a "basis in fact" for denying the defendant's claim for a IV–D classification (ministerial exemption).

Section 16(g) of the Selective Service Act defines minister as follows:

(1) The term "duly ordained minister of religion" means a person who has been ordained, in accordance with the ceremonial, ritual, or discipline of a church, religious sect, or organization established on the basis of a community of faith and belief, doctrines and practices of a religious character, to preach and to teach the doctrines of such church, sect, or organization and to administer the rites and ceremonies thereof in public worship, and who as his regular and customary vocation preaches and teaches the principles of religion and administers the ordinances of public worship as embodied in the creed or principles of such church, sect, or organization.

(2) The term "regular minister of religion" means one who as his customary vocation preaches and teaches the principles of religion of a church, a religious sect, or organization of which he is a member, without having been formally ordained as a minister of religion, and who is recognized by such church, sect, or organization as a regular minister.

(3) The term "regular or duly ordained minister of religion" does not include a person who irregularly or incidentally preaches and teaches the principles of religion of a church, religious sect, or organization and does not include any person who may have been duly ordained a minister in accordance with the ceremonial, rite, or discipline of a church, religious sect or organization, but who does not regularly, as a vocation, teach and preach the principles of religion and administer the ordinances of public worship as embodied in the creed or principles of his church, sect, or organization. 50 U.S.C. App. § 466(g) (1964).

While these statutory definitions do not lend themselves to easy application in a case involving a Jehovah's Witness, Justice Clark in Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L. Ed. 132 (1953), applied the statute in a case strikingly similar to the one before me. Both the reasoning and the language of *Dickinson* apply to the case at bar.

Each registrant must satisfy the Act's rigid criteria for the exemption. Preaching and teaching the principles of one's sect, if performed part-time or half-time, occasionally or irregularly, are insufficient to bring a registrant under § 6(g) [sic]. These activities must be regularly performed. They must, as the statute reads, comprise the registrant's "vocation." And since the ministerial exemption is a matter of legislative grace, the selective service registrant bears the burden of clearly establishing a right to the exemption.

We think Dickinson made out a case which meets the statutory criteria. He was ordained in accordance with the ritual of his sect and, according to the evidence here, he meets the vital test of regularly, as a vocation, teaching and preaching the principles of his sect and conducting public worship in the tradition of his religion. * *

Why, then, was Dickinson denied IV–D? It may be argued that his five hours a week as a radio repairman supplied a factual basis for the

denial. We think not. The statutory definition of a "regular or duly ordained minister" does not preclude all secular employment. Many preachers, including those in the more traditional and orthodox sects, may not be blessed with congregations or parishes capable of paying them a living wage. A statutory ban on all secular work would mete out draft exemptions with an uneven hand, to the detriment of those who minister to the poor and thus need some secular work in order to survive. (Footnote omitted.) 346 U.S. at 395, 74 S.Ct. at 157.

The Watchtower Bible and Tract Society certified the defendant as a "Servant in Congregation" as follows:

"THIS IS TO CERTIFY that ROBERT W. KIDSON is a duly ordained minister of Jehovah's Witnesses, engaged in preaching and teaching the principles of this Society and administering the rites and ceremonies thereof in public worship.

He has been duly ordained in accordance with the principles prescribed by this Society. This was by a public ceremonial on July 20, 1959, whereby he confessed in the presence of witnesses that his life was thereafter dedicated to the service of Almighty God, Jehovah, as a minister and to follow the footsteps of Christ Jesus, preaching God's Kingdom of righteousness. Since such date he has been recognized by this Society as qualified to represent it in such capacity.

He presently officiates as an assistant presiding minister of the Newburyport, Massachusetts, Congregation of Jehovah's Witnesses. He has been serving since September 14, 1967 as the Ministry School Servant for this congregation and as such he is in charge of the local school for instruction in theocratic ministry and the advanced study of the Bible and Bible subjects and he assists the presiding minister in arranging for public Bible discourses in the assigned territory of the congregation.

He also regularly and customarily engages in preaching and teaching the tenets and principles of Jehovah's Witnesses as a missionary evangelist. He is authorized to perform the ordinary rites and ceremonies recognized and employed by Jehovah's Witnesses. And he performs such other ministerial duties as are required of him as an assistant presiding minister.

He is therefore declared and certified by this Society to be, in accordance with its principles, a duly ordained minister, having the qualifications to preach the Gospel of God's Kingdom through Christ Jesus.—Isaiah 61:1, 2; Matthew 24:14. Ex. 1–16A.

Judged by traditional standards, there can be no doubt that the defendant was acting in the capacity of an assistant pastor or assistant minister.

The decision of the Local Board to reclassify the defendant I–A is difficult to understand, particularly in the light of the following Local Board entry with respect to the defendant's personal appearance, and its failure to give any reason for the decision:

Mr. Robert Kidson appeared before the board. Also present were Mrs. Kidson and Mr. Carlson. Mr. Kidson is an ordained minister of Jehovah's Witnesses. Mr. Kidson has his own congregation within an assigned territory. There are approximately 50 ministers in the registrant's Kingdom Hall. Mr. Kidson is a Book Study Servent (sic) in the Ipswich Congregation.

Mr. Kidson spends 26 hours per week toward the ministery. Mr. Kidson works as a die bender and works a 40 hour week. Ex. 1–17.

The question before the Court, however, is whether or not the Appeal Board's I–O classification, which was in effect a denial of the defendant's application for a IV–D classification, had a "basis in fact." I find that it did not

and, moreover, was probably based on a misunderstanding of the law.

 Major Davis, Manpower Officer for the State of New Hampshire, testified that only those who had achieved a "full Pioneer status" within the Jehovah's Witnesses organization were entitled to a ministerial exemption.[1] I must assume that the Appeal Board was also of this opinion. While this rule may be based on unofficial Selective Service practice, there are no regulations to that effect, nor does the statute or case law compel such a conclusion. The statute sets forth the explicit requirements for a ministerial exemption and the Selective Service authorities have a duty to apply those requirements to the facts of each case. Whether a person deserves a ministerial exemption, depends not upon his status or title in his particular sect, but on whether or not he actually fulfills the statutory requirements for such exemption.

 The duty of the trial court is set forth clearly and succinctly in *Dickinson*:

> The task of the courts in cases such as this is to search the record for some affirmative evidence to support the local board's overt or implicit finding that a registrant has not painted a complete or accurate picture of his activities. 346 U.S. at 396, 74 S.Ct. at 157.

No such affirmative evidence has been found.

 A comparison of the defendant's activities in *Dickinson* and the case at bar is fruitful. In *Dickinson*, the defendant was a full-time "Pioneer," devoting one hundred and fifty hours a month to religious efforts. He was the presiding minister of a "Company" and only spent five hours a week at secular work. He does not appear to have been married. In the case at bar, the defend-ant is a "Servant in Congregation" and an assistant presiding minister of a Congregation. Like Dickinson, he devotes one hundred and fifty hours per month to religious efforts. The only clear difference between Dickinson and the defendant is that Dickinson only spent five hours a week at secular work while the defendant here spends forty hours a week at secular work. The Court finds this difference unimpressive. The language of the Fifth Circuit in Wiggins v. United States, 261 F.2d 113 (5th Cir. 1958), cert. denied, 359 U. S. 942, 79 S.Ct. 723, 3 L.Ed.2d 676 (1959), is persuasive:

> In this case Wiggins has shown that he dedicated himself at an early age to serving Jehovah's Witnesses; that he regarded this endeavor as his chief purpose in life, the secular employment being incidental. He has shown that he stood in the relation of a religious leader to other members of his faith, in a capacity comparable to that of an *assistant pastor*. He has shown that he performed his religious duties regularly, without allowing his secular work to interfere with his religious work. We hold that a crane operator working a forty-hour week may be a minister in Jehovah's Witnesses and entitled to the ministerial exemption under the Selective Service Act, *although spending only forty hours a month on religious duties*. (Emphasis added.) 261 F.2d at 119.

The defendant here must support not only himself but also his sick wife. He spends as much time pursuing ministerial duties as did Dickinson and it would be unjust to penalize him merely because he puts in a greater number of hours at secular work to support himself and his wife, than did Dickinson.

I find that the defendant made out a prima facie case for a ministerial exemption and there was no "basis in

---

[1]. "When a certificate comes in from the Jehovah's Witnesses organization that a man is a regular Pioneer he will be clas-sified IV–D. Lacking that, he would not be classified IV–D."

fact" for denying him a IV–D classification.

This finding makes unnecessary any consideration of whether or not the defendant presented a prima facie case for a hardship deferment requiring the Board to reopen.

The defendant is found not guilty.

So ordered.