430 F.2d 832
 UNITED STATES of America ex rel. Dennis RASMUSSEN, Appellant,
v.
COMMANDING OFFICER, UNITED STATES ARMED FORCES EXAMINING AND ENTRANCE STATION, FORT DES MOINES, DES MOINES, IOWA, Appellee.
 No. 20147.
 United States Court of Appeals, Eighth Circuit.
 August 6, 1970.
 
 Dan Johnston, of Jesse, LeTourneau & Johnston, Des Moines, Iowa, for appellant.
 Richard J. Barry, Asst. U. S. Atty., Des Moines, Iowa, for appellee; Allen L. Donielson, U. S. Atty., on the brief.
 Before VOGEL, Senior Circuit Judge, and GIBSON and BRIGHT, Circuit Judges.
 GIBSON, Circuit Judge.
 
 
 1
 This is an appeal from the District Court's denial of appellant's application for writ of habeas corpus seeking release from the Armed Forces of the United States. The District Court's[1] memorandum opinion delineates in chronological order the facts pertinent to the disposition of this case:
 
 
 2
 "Petitioner Dennis Rasmussen, age 20, is a resident of Goldfield, Humboldt County, Iowa. In September 1967 petitioner registered with Humboldt County Local Board 13-46 and in October 1967, was classified a student and granted a student deferment. In January 1968, petitioner quit school and in February 1968, was reclassified 1-A. Petitioner was advised of his right to appeal this classification and an appointment was arranged with the government appeal agent at petitioner's request. Petitioner in March 1968, appealed his 1-A classification on the basis that his ownership and operation of a 160-acre farm as well as being part owner of a registered herd of cattle entitled him to an occupational deferment. On April 10, 1968, petitioner notified the local board that his father had suffered a heart attack and that he now had responsibility of farming 660 acres. On April 24, 1968, petitioner's appeal was denied and his 1-A classification was continued. In February 1969, an order was sent to petitioner to report for an armed forces physical examination. On March 10, 1969, the local board was notified by petitioner that he was married March 1, 1969. On March 13, 1969, petitioner presented a doctor's statement that petitioner's father should not engage in active farming at that time for health reasons. On April 15, 1969, the local board decided not to reopen petitioner's classification and notice to this effect was sent to the registrant. On June 9, 1969, petitioner received his induction notice for July 14, 1969. In June 1969, petitioner was granted a postponement of induction until November 1969. On October 15, 1969, notice was received of the pregnancy of petitioner's wife. On October 20, 1969, the local board was advised by the state selective service headquarters that since Mrs. Rasmussen's pregnancy occurred subsequent to petitioner's induction order, it would have no effect on petitioner's status. Petitioner in November 1969, was granted a second postponement of induction until December 3, 1969."
 
 
 3
 On December 2, 1969, the District Court denied appellant's request for a temporary restraining order seeking to enjoin his induction. On December 3, 1969, appellant was inducted into the armed forces and on December 4, 1969, he filed a petition for writ of habeas corpus, contending he was unlawfully detained by the appellee, the Commanding Officer of the Examination and Induction Center. A habeas corpus hearing was held on December 8, 1969.[2] Appellant's application for the writ was denied by the District Court on December 29, 1969. Appellant filed notice of appeal on January 2, 1970, and, on January 5, 1970, the District Court ordered its judgment stayed and appellant released from custody pending adjudication of the appeal.
 
 
 4
 The appellant contends his restraint is unlawful because Local Board 13-46 of the Selective Service System has denied him procedural rights requisite to due process of law in denying him a deferment from the Armed Forces because of the dependency of his father and family upon him for support. Appellant's main contention is that he presented factual information to his Local Selective Service Board which constituted a prima facie case entitling him to a III-A dependency classification (extreme hardship to a member of registrant's family), but the Board failed to reopen and reconsider his classification, thereby depriving him of his procedural rights of personal appearance and appeal. Appellant argues that information of a parent's physical disability and resulting dependence upon a registrant for support constitutes a prima facie case for the classification III-A(b), citing Lewis v. Secretary, Dept. of the Army, 402 F.2d 813 (9th Cir. 1968); Petrie v. United States, 407 F.2d 267 (9th Cir. 1969) (en banc); and Lane v. Allen, 307 F.Supp. 881 (N.D.Ohio 1969). Assuming arguendo he did not present sufficient facts to establish a prima facie case, appellant claims there is no evidence he was provided Selective Service Form Number 118, the dependency questionnaire, which would have provided the Board with more complete data. Finally, it is asserted the Selective Service System recognized some dependency of the Rasmussen family upon appellant because two induction postponements were granted in order that farmwork might be completed.
 
 
 5
 The Government's concise reply to appellant's contention is that the information presented by appellant was not sufficient to make out a prima facie case of extreme hardship on his parents and, therefore, it was not incumbent upon the Board to reopen his classification.
 
 
 6
 The dependency classification is provided for in 32 C.F.R. § 1622.30(b): "In Class III-A shall be placed any registrant whose induction into the armed forces would result in extreme hardship (1) to his * * * parent * * * who is dependent upon him for support * * *." The burden of establishing that one is entitled to a requested classification is of course upon the registrant. 32 C.F.R. § 1622.10.
 
 
 7
 The Selective Service regulations pertinent to the question of reopening a registrant's classification were succinctly summarized in Mulloy v. United States, 398 U.S. 410, 414-15, 90 S.Ct. 1766, 26 L.Ed.2d 362 (1970):
 
 
 8
 "Under the Selective Service regulations a `local board may reopen and consider anew the classification of a registrant . . . [if presented with] facts not considered when the registrant was classified which, if true, would justify a change in the registrant's classification. . . .' 32 CFR § 1625.2. Even if the local board denies the requested reclassification, there is a crucial difference between such board action and a simple refusal to reopen the classification at all. For once the local board reopens, it is required by the regulations to `consider the new information which it has received [and to] again classify the registrant in the same manner as if he had never been classified.' 32 CFR § 1625.11. A classification following a reopening is thus in all respects a new and original one, and even if the registrant is placed in the same classification as before, `each such classification [following the reopening] shall be followed by the same right of appearance before the local board and . . . of appeal as in the case of an original classification.' 32 CFR § 1625.13. Where, however, in the opinion of the Board, no new facts are presented or `such facts, if true, would not justify a change in such registrant's classification . . .,' 32 CFR § 1625.4, the Board need not reopen, and following such a refusal to reopen, the registrant has no right to a personal appearance or to an appeal. Thus, whether or not a reopening is granted is a matter of substance, for with a reopening comes the right to be heard personally and to appeal." (footnote omitted).
 
 
 9
 In Mulloy the Supreme Court held that procedural due process requires a board to reopen a registrant's classification in certain circumstances:
 
 
 10
 "Where a registrant makes nonfrivolous allegations of facts that have not been previously considered by his Board, and that, if true, would be sufficient under regulation or statute to warrant granting the requested reclassification, the Board must reopen the registrant's classification unless the truth of these new allegations is conclusively refuted by other reliable information in the registrant's file." Id. at 416, 90 S.Ct. at 1771.
 
 
 11
 See also Vaughn v. United States, 404 F.2d 586, 590 (8th Cir. 1968); Davis v. United States, 410 F.2d 89, 93 (8th Cir. 1969).
 
 
 12
 The crux of appellant's contention is that by alleging both the fact of his father's physical disability and that his services were needed in operating his father's farm, he made out a prima facie showing for a III-A classification, which required the Board to reopen his classification. We disagree. Mulloy held that a Board must reopen if a registrant makes nonfrivolous allegations of facts which establish a prima facie claim to a classification. The Mulloy Court found that the petitioner's articulation of his conscientious objector beliefs in his SSS form 150 and the five accompanying letters from acquaintances attesting to the sincerity of his beliefs constituted a prima facie showing that he met the statutory standard for classification as a conscientious objector. While Mulloy did not say that a Board need not reopen when a registrant makes only a request for a classification or a general allegation that he is entitled to a certain classification, this conclusion not only logically follows but is compelled by 32 C. F.R. § 1625.4, which states the Board need not reopen where no new facts are presented or such facts, if true, would not justify a change in the registrant's classification.
 
 
 13
 The only facts presented to the Board in appellant's request for a dependency hardship classification, Class III-A, were that his father had suffered a heart attack in April 1968 and would be completely disabled for one full year and partially disabled for the next year and that appellant's services were required to run his father's farm, a substantial one of 660 acres.[3] One year after this report of oral information by appellant, appellant submitted a letter from his father's doctor stating that his father "should not engage in active farming at this time because of his health."
 
 
 14
 These allegations, even if true, do not establish a prima facie III-A claim. A registrant establishes a prima facie case for a III-A classification by making nonfrivolous allegations of facts indicating "not only that he makes a substantial financial contribution to a dependent listed in the regulation, but also that the dependent, if deprived thereof, would suffer extreme hardship." United States v. Burlich, 257 F.Supp. 906, 911 (S.D.N.Y.1966). For appellant to establish a prima facie case, it was necessary that he allege facts indicating that his parents, or at least one of them, were dependent on him for support, that he was in fact making a substantial financial contribution towards their support, and that they would suffer extreme hardship if deprived of his support.
 
 
 15
 Appellant made no factual allegations indicating that his parents would suffer extreme hardship if deprived of his support. Indeed, appellant made no factual allegations showing that his parents were financially dependent at all upon him or that he had contributed or was contributing anything towards their support. In addition, help could have been hired to run the farm or the productive facilities of the farm could have been rented out. The possibility that appellant might conceivably have achieved a more profitable operation of the farm than would be realized from some other alternative affords no basis at all for concluding that his parents would suffer extreme hardship from his induction. Finally, we emphatically reject the contention that the Selective Service System's action in granting appellant two induction postponements so that farmwork could be completed constituted an admission that appellant's parents were dependent on him. To so hold would effectually preclude local boards from making personal accommodations to registrants whose imminent induction might work an inconvenience on them.
 
 
 16
 The Ninth Circuit cases cited by appellant also reflect the view that allegations of facts showing that a parent is financially dependent upon the registrant and that the parent would suffer extreme hardship if deprived of the registrant's support are a prerequisite to establishing a prima facie III-A case. The following factual allegations were held to establish a prima facie case in Petrie v. United States, 407 F.2d 267 (9th Cir. 1969) (en banc): (1) registrant's father had been killed in a plane crash and had left over a quarter of a million dollars in debts; (2) the registrant supported not only his mother but also his grandmother, contributing $450 per month for his mother's support; (3) registrant's mother's age and arthritis, her lack of a skill or trade and her responsibility in caring for her 87-year-old mother who was senile and a semi-invalid prevented her from supporting herself, although she was earning about $60 per month as a voice teacher; (4) the insurance money received following the death of registrant's father had been used to pay off debts and to finance the registrant's flight education; (5) registrant was earning $140 per week as a flight instructor; (6) registrant provided the sole means of transportation for his mother and grandmother, neither of whom could drive. In Lewis v. Secretary, Dept. of the Army, 402 F.2d 813 (9th Cir. 1968), the following allegations established a prima facie case for a III-A classification: (1) registrant's mother was 64, a widow of 9 years and unable to work (according to her medical report); (2) the registrant had two married brothers: one had a large family and lived 3000 miles away and the other was unemployed and had one child (and another expected soon); (3) registrant had a gross annual income of $8500 and he contributed $175 per month to his mother's support, and more when property taxes and insurance were due; (4) registrant's mother had a gross annual income of $1888 from dividends and Social Security payments; (5) registrant's mother's age and chronic condition of poor health were such that she required the care and attention of another person.
 
 
 17
 Lane v. Allen, 307 F.Supp. 881 (N.D. Ohio 1969), relied on by appellant, is distinguishable on its facts. In Allen a district court held that a prima facie III-A case was made out on the basis of statements by the registrant and his mother that the registrant was the mother's sole "financial and protection support," the registrant's brothers and sisters were married and maintained their own homes, and registrant's mother was "not in the best health and can't hold a job." Both the registrant Lane and his mother alleged the registrant was solely responsible for his mother's financial support, whereas in the instant case appellant alleged only that he was needed to run his parent's farm because of his father's disability. In United States v. Grier, 415 F.2d 1098, 1100 (4th Cir. 1969), the Fourth Circuit held that the registrant established a prima facie case for a III-A classification in his letter to his board stating "his mother was a mental invalid, that his brother was enrolled in school, and that his family was, for the most part, dependent upon him for support." Grier too is distinguishable because Grier alleged he was primarily responsible for the financial support of his mother and because his mother had no other means of support than from his earnings, whereas in the instant case appellant's parents' farm provided them with an independent means of support.
 
 
 18
 We recognize that the extreme hardship standard is obviously very general and that ultimate resolution of whether a prima facie III-A claim has been made out presents an ad hoc factual issue. However, we think § 1625.4 plainly does not require boards to reopen on such minimal allegations as set forth by appellant. Appellant failed to allege facts showing the financial circumstances justifying a dependency deferment, that is, that his parents were dependent on him for support, that he was in fact making a substantial financial contribution towards their support, and that they would suffer extreme hardship if deprived of his support.
 
 
 19
 We note in passing that appellant also failed to establish a prima facie case of dependency at his habeas corpus proceeding. As noted by the trial court, "[I]f there is any substance to Section 1625.4, the facts of this case most assuredly warrant its application."
 
 
 20
 In regard to the issue as to the Board's failure to provide appellant with a dependency questionnaire, we note that the Selective Service regulations make no mention of this questionnaire. In contrast, 32 C.F.R. § 1621.11 imposes a mandatory duty upon the Board to supply a registrant a Special Form for Conscientious Objector (Form 150) upon request and the failure to perform this duty will vitiate a conviction for failure to report for induction. United States v. Bowen, 414 F.2d 1268, 1271 (3d Cir. 1969).
 
 
 21
 Failure of the Board to furnish appellant with a dependency questionnaire was not shown to have prejudiced appellant. Appellant does not allege he requested such a questionnaire, nor does he contend he was unaware that such questionnaires are utilized by draft boards in making their reopening and reclassification determinations. This questionnaire is not required by the regulations, nor do we think it must be furnished as a matter of procedural due process.
 
 
 22
 Appellant's final contention is that the Board did in fact make an evidentiary evaluation of the information presented by appellant without formal reopening and reconsideration, thereby denying appellant the rights of a personal appearance and appeal requisite to due process of law.
 
 
 23
 The Government contends that when a registrant requests his Board to reopen his classification for deferment and presents new information, the Board can examine, consider and evaluate other portions of the registrant's file to refresh Board members' memories as to the facts contained therein without deeming this perusal of the registrant's file a reopening of his classification. The Government acknowledges that the testimony of Board Chairman Hart that one reason the Board thought appellant's parents were not dependent upon him was the farm could be rented out and the testimony of Board Secretary Harlan that had the Board reopened appellant's classification, it would have reclassified him, may indicate some confusion in the minds of Hart and Harlan as to what constitutes a reopening, but argues the best evidence of what they actually meant was the writing on appellant's classification memorandum that the Board considered appellant's file and did not reopen it.
 
 
 24
 Mulloy indicates that a de facto reopening occurs if the Board goes beyond checking whether the truth of the registrant's new allegations
 
 
 25
 "* * * is conclusively refuted by other reliable information in the registrant's file. * * * For in the absence of such refutation there can be no basis for the Board's refusal to reopen except an evaluative determination adverse to the registrant's claim on the merits. And it is just this sort of determination that cannot be made without affording the registrant a chance to be heard and an opportunity for an administrative appeal." Mulloy v. United States, 398 U.S. at 416, 90 S.Ct. at 1771, 26 L.Ed.2d 362.
 
 
 26
 It is arguable Board Chairman Hart's testimony that the Board concluded appellant did not make out a prima facie case for a III-A classification because Hart had personal knowledge the Rasmussen farm could be rented out indicates the Board made an evaluative determination of appellant's claim on the merits while purportedly declining to reopen his classification. However, the rental information was in appellant's file and had been previously considered by the Board in classifying appellant I-A. Nonetheless, we conclude that under Mulloy the procedural rights to a personal appearance and an appeal do not flow from a de facto reopening unless the registrant has first established a prima facie case for the requested classification. Consequently, it is clear in the instant case that even though the Board may have gone beyond checking the truth of appellant's new allegations, the Board's action is not prejudicial to appellant since he failed to establish a prima facie case for a III-A classification.
 
 
 27
 In requesting a III-A dependency deferment, appellant sought to have his classification reopened so that he could again appeal his classification and obtain a further postponement of his impending army service. Although his classification was not reopened, he has nonetheless achieved at least a six-month delay in entering active military service through his habeas corpus proceeding, which has operated as a deferment over and beyond those granted to him by the Board.
 
 
 28
 Judgment of District Court is affirmed and mandate is ordered issued forthwith.
 
 
 
 Notes:
 
 
 [1]
 The Honorable William C. Hanson of the Southern District of Iowa
 
 
 [2]
 The only evidence developed at the habeas corpus hearing which is pertinent to the resolution of this case was the testimony of Board Secretary Mrs. Hazel Harlan and Board Chairman Leonard J. Hart. Mrs. Harlan testified the Board did not reopen appellant's classification, that had the Board reopened appellant's classification, it would have reclassified him. Board Chairman Hart testified that one reason the Board thought appellant's parents were not dependent upon him was that their farm could be rented out
 
 
 [3]
 These facts were noted on appellant's file and were considered in connection with his then pending appeal from the Board's failure to accord him a Class II-C occupational deferment. Appellant lost his appeal on his Class II-C request. Agriculture is no longer considered a deferrable occupation. This, however, is not an issue in this case