UNITED STATES of America,
Plaintiff-Appellee,

v.

James J. HAWVER, Defendant-Appellant.

No. 18102.

United States Court of Appeals,
Seventh Circuit.

Jan. 26, 1971.

Kenneth S. Jacobs, Jacobs & Spencer, Villa Park, Ill., for appellant.

David J. Cannon, U. S. Atty., Richard E. Reilly, Terry E. Mitchell, Asst. U. S. Attys., Milwaukee, Wis., for appellee.

Before KILEY, FAIRCHILD and KERNER, Circuit Judges.

FAIRCHILD, Circuit Judge.

Appellant Hawver was convicted of failure to report for civilian work as ordered by his draft board. The order was based on a I–O classification as a conscientious objector. Appellant's defense and this appeal are based upon the claim that the order was invalid because he was entitled to classification IV–D as a minister exempt from service. The district court denied a motion for judgment of acquittal.

The board actions under scrutiny are as follows: (1) On August 18,

1966 the local draft board classified him IV–D. (2) On January 18, 1967 the local board classified him I–O, and on appeal the appeal board classified him I–O. (3) The local board failed to reopen in response to information which appellant filed April 24, 1967. In essence, the August 18, 1966 IV–D classification was based upon a decision that Hawver was a regular pioneer minister, Jehovah's Witnesses, and the January 18, 1967 I–O classification on the board's belief that his status was less than that of regular pioneer minister. We think the claim that the board should have reopened in April needs no separate consideration. If the board's January 18 decision be sustainable, the failure to reopen was likewise sustainable, for the differences between the information before the board on January 18 and that on April 24 seem to be insignificant in terms of the applicable legal principles.

The information before the board on August 18, 1966, when it granted the IV–D, included the following:

Appellant became 18 April 16, 1964. He was about to finish high school and claimed both that he was a conscientious objector and a minister of Jehovah's Witnesses, ordained October 26, 1963.[1] He presented statements of himself and others (including the presiding minister of the Watertown congregation) describing his preaching and teaching the principles of religion, but he conceded his attendance at school made it difficult for him to spend as much time in that activity as he hoped to do in the future. It seems clear that he failed to make out a claim that such activity was then his regular and customary vocation. The board classified him I–A June 15, 1964, and I–O on July 18, 1964.

On July 8, 1966, appellant wrote the board asking that his I–O classification be reopened because he had been appointed a regular pioneer minister. He presented a letter of the Watchtower Bible & Tract Society entitled "Regular Pioneer Appointment". It was dated June 10, and stated that the appointment was as of July 1. The board again classified him I–O and he requested a personal appearance.

At the board's request, appellant filed a current information questionnaire in which he said the job at which he was working was "regular pioneer minister", describing his work as "door to door ministry, conduct home Bible studies, hold public meetings". Previous questionnaires had indicated employment in automobile body repair, and this was now referred to under "other occupational qualifications".

The summary of his personal appearance, August 18, shows that he said under oath that he had been devoting full time to his ministerial duties since February 1, 1966, with approximately 100 hours spent per month, and that he worked only 20 hours per week at the auto repair job, to maintain himself. The IV–D classification was then granted.

There is testimony by the clerk of the local board that another document, although stamped to show receipt by the board on August 18, the date of the personal appearance and IV–D classification, was not actually before the board at the meeting. This document was entitled "Certificate for Servant in Congregation". It was signed by the society and also by its Superintendent of Ministers and Evangelists, and dated August 9, 1966. It certified, in material part, as follows:

"James J. Hawver is a duly ordained minister of Jehovah's Witnesses, engaged in preaching and teaching the principles of this Society and adminis-

---

1. The words "ordain" and "minister" are used by Jehovah's Witnesses with content such that they do not fit easily into the statutory concept of "regular or duly ordained ministers of religion." 50 App. U.S.C. § 456(g), defined in § 466(g).

tering the rites and ceremonies thereof in public worship.

\* \* \* \* \* \*

"He presently officiates as an assistant presiding minister of the Watertown, Wisconsin, Congregation of Jehovah's Witnesses. He has been serving since March 9, 1966 as the Book Study Conductor for this congregation and as such he presides over Bible studies at certain designated meeting places throughout the congregation's assigned territory and generally supervises the ministerial activity of Jehovah's Witnesses from such meeting places.

\* \* \* \* \* \*

"He also regularly and customarily engages in preaching and teaching the tenets and principles of Jehovah's Witnesses as a missionary evangelist. He is authorized to perform the ordinary rites and ceremonies recognized and employed by Jehovah's Witnesses. And he performs such other ministerial duties as are required of him as an assistant presiding minister."

On November 29, the clerk of the board noticed this certificate in the file and wrote appellant asking "that you have your headquarters submit an original copy of your status in your church. If you are a 'Pioneer Minister', have that fact stated on your certification." On December 24, appellant replied that he had sent for the requested "letter", but it had not been received; that he would send it as soon as received. Unfortunately the clerk did not specifically ask for, and appellant did not volunteer, his own explanation whether or not his appointment as pioneer minister had been revoked or whether or not his status as assistant presiding minister and book study conductor was inconsistent with his continuing to be, by regular

and customary vocation, a pioneer minister.[2] Appellant had, however, on November 9, returned a current information questionnaire in which he said his job was "Minister (Pioneer)" and described his work as "Conduct public meetings, personally help church members with Bible lessons, etc." He again listed "auto body repair" under "other occupational qualifications".

No further information was before the board when it classified him I–O January 18, nor before the appeal board when it made the same classification. Appellant did not submit detailed, current information about the nature and extent of his day to day preaching and teaching activity, but it is clear from the board's file, including correspondence with state headquarters that the board would not have deemed that such information established him a minister by regular and customary vocation unless he submitted a current certification of his continuing official status as a regular pioneer minister.

Appellant first argues that his reclassification on January 18 rests upon an unlawful reopening. Selective Service Regulation 32 C.F.R. 1625.2 provides in relevant part: "The local board may reopen and consider anew the classification of a registrant. \* \* \* (b) upon its own motion if such action is based upon facts not considered when the registrant was classified, which, if true, would justify a change in the registrant's classification". Appellant argues that since the "Certificate for Servant in Congregation" was received by the board during business hours August 18 it must be treated as having been considered by the board at its meeting that evening. It is contended that as a result the board exceeded its authority by reopening, since no new fact was before it.

2. Mr. Carlson, presiding minister of the Watertown congregation testified at the trial to the effect that there was no inconsistency; that a pioneer minister may, although he need not, accept assignments in a congregation, and that appellant jointly held the position of pioneer minister and book study conductor for the congregation (as well as literature servant for the congregation at a later date).

The clerk, however, testified that this certificate was not presented to the board at the meeting. She explained that "It was received in the office, but the mail is stamped and sometimes not processed until the next day". The summary of the personal appearance refers to only one letter from the society, and that may well have been the letter dated June 10.

Accepting the fact that the August 9 certificate had not been considered by the Board when it classified appellant IV–D, the question presented under the regulation is whether the August 9 certificate and appellant's delay in obtaining a new one upon request, "would justify" withdrawal of the IV–D classification.[3] We thus need not consider the question whether the board has power, on its own motion, to reopen and reconsider a classification where no new facts are before the board.

It is clear that the board proceeded on the premise that a Jehovah's Witness must be at least a regular pioneer minister in good standing before his claim that he is a "regular or duly ordained minister of religion" can be granted. Accepting that premise, the question is whether the August 9 certificate, coupled with appellant's failure to obtain a certificate that he continued in good standing as a regular pioneer minister, provided a basis in fact for rejecting appellant's repeated assertions that he was a pioneer minister, documented by the June 10 letter of appointment.[4]

This is a close question. On the one hand, the query whether a Jehovah's Witness could or would ordinarily be, at the same time, both a regular pioneer minister and a book study conductor for and assistant presiding minister of a particular congregation, or why, if he were, a certificate would not mention all of these capacities, is not a strained or unreasonable one. And, as the district court suggested, six weeks would seem to be a sufficient period within which to obtain documentation to answer the query if it could be answered in appellant's favor. On the other hand, the two documents are not bluntly inconsistent on their face, nor can it be said that it is a matter of common knowledge that they are inconsistent.[5] The two documents differed in form. The June 10 letter was addressed to appellant, informed him of his appointment, and instructed him in his duties. The August 9 certificate was addressed to no one in particular. The August 9 certificate covered appellant's service as book study conductor from March 9, 1966 to August 9. The appointment described in the June 10 letter was made during the same period, and the conclusion that appellant served in both capacities from July 1 on is at least as reasonable as the

3. Appellant submitted two documents later, in April, 1967. One was a new "Certificate for Servant in Congregation", dated January 31, 1967. It stated that it replaced the August 9 certificate. It contained the same information except that it added that since October 18, 1966, appellant had also been Literature Servant for the Watertown congregation, supervising the distribution of Bibles and publications throughout the congregation's assigned territory. The other document he submitted in April was a photo copy of the letter of June 10 appointing him a regular pioneer minister.

4. In correspondence with reference to the January 31 certificate, a representative of the state headquarters wrote the board that the August 9 certificate "appears to supersede" the regular pioneer minister appointment of June 10; that there is no evidence of "reinstatement" as a regular pioneer minister; and that the January 31 certificate appears to reflect appellant's "current status".

5. Helpful information concerning the various functionaries in the organization of Jehovah's Witnesses is found in United States v. Tettenburn (D.Md., 1960), 186 F.Supp. 203, and United States v. Stidham (W.D.Mo.1960), 248 F.Supp. 822.

conclusion that the appointment had been revoked between June 10 and August 9, and reference to it was omitted for that reason. We are aware of no inconsistency between the activity described in the August 9 certificate, that appellant "also regularly and customarily engages in preaching and teaching the tenets and principles of Jehovah's Witnesses as a missionary evangelist", and the preaching and teaching activity he would be carrying on as a regular pioneer minister.

With respect to appellant's failure to provide a current certification by the Watchtower Society of his continued status as a regular pioneer minister, the proceedings shown in the board's file never did make it clear whether such failure signified that he was no longer in good standing as a pioneer, or that he failed to make plain to the society what type of certificate the board wanted, or that the society chose for other reasons of its own not to give that type of certificate. The board did not ask appellant for his explanation. The board's file, however, reveals that appellant steadfastly continued to maintain that he was a pioneer minister.

█ Even if we accept, with some reluctance, the proposition that the board's query about the effect of the August 9 certificate upon the June 10 appointment, together with appellant's failure to supply the further documentation requested by the board, was a basis in fact for the board's decision that appellant was not a pioneer minister, that acceptance alone does not establish the validity of the withdrawal of the IV–D classification.

█ The further question is whether status as a pioneer minister (or higher) is essential to the grant of IV–D to a Jehovah's Witness who otherwise makes a prima facie case that his religious preaching and teaching activity is his customary and regular vocation. Although the view that a Jehovah's Witness pioneer minister is equivalent to a minister for the purpose of the exemption is widely used as a rule of thumb, we conclude that, under the statute, the converse is not universally true.

The statutory definitions of "duly ordained minister of religion" and of "regular minister of religion" are found in 50 App. U.S.C. § 456(g). Dickinson v. United States [6] involved a Jehovah's Witness who was a pioneer minister, as well as a company servant for a particular congregation or company, but the Supreme Court characterized as the "vital test" whether he was "regularly, as a vocation, teaching and preaching the principles of his sect and conducting public worship in the tradition of his religion." [7]

Several courts have held that being a pioneer minister is not necessary in order to fulfill the test. Each of these cases involved a Jehovah's Witness who held a lesser title than regular pioneer minister, but who appeared, prima facie, to make religious teaching and preaching his regular and customary vocation. In each case, the court held unlawful the board's denial of a IV–D classification solely on the basis that the registrant was not a regular pioneer minister.[8] It has been held in a case involving a different faith that the board must not rely on a particular title, but must consider

6. (1953) 346 U.S. 389, 74 S.Ct. 152. 98 L.Ed. 132.

7. 346 U.S. 395. 74 S.Ct. 152, 157.

8. United States v. Tichenor (6th Cir., 1968), 403 F.2d 986: Book Study Conductor devoting 27½ hours per week to his ministry; United States v. Hestad (W.D.Wis., 1965), 248 F.Supp. 650: Vacation Pioneer, 200 hours per month; United States v. Dillon (D.Or., 1968), 294 F.Supp. 38: Vacation Pioneer, 130 hours per month; United States v. Kidson (D.N.H., 1970), 315 F.Supp. 132: Ministry School Servant, 150 hours per month.

whether the registrant's activity fulfills the "vital test" of *Dickinson*.[9]

In 1958 the fifth circuit held that a Jehovah's Witness book study conductor had made out a prima facie case for exemption.[10] In later cases, however, the fifth circuit has, in upholding a board's denial of IV–D classification to a Jehovah's Witness, placed considerable emphasis upon the fact that the registrant was not a pioneer minister. In McCoy v. United States[11] and in Robertson v. United States[12] the court upheld denials, and gave weight to the statement of the general counsel for the Watchtower Society that the Society would not contend for a IV–D classification except for those who are pioneers or congregation servants (not pioneers) who can show that they are devoting their time to the ministry work of Jehovah's Witnesses sufficiently to claim that it is their vocation rather than their avocation. We do not read either case, however, as squarely holding that if a Jehovah's Witness makes out a prima facie claim that his religious teaching and preaching activity is his regular and customary vocation, a board may validly deny him a IV–D classification solely on the ground that he does not hold the title of congregation servant or pioneer minister or higher. The opinion in *McCoy* lays some stress on the fact that the registrant, who was a vacation pioneer, was failing to spend enough time in his ministerial efforts to qualify as a pioneer. The principal opinion in *Robertson* points out, 417 F.2d at p. 446, "It is contrary to the evidence of record, therefore, to say that Robertson's request for

a ministerial exemption was denied solely due to the fact that he was only a Vacation Pioneer. Denial of the IV–D classification was based on all of the facts and circumstances which the board believed were insufficient to justify such a classification. * * * The evidence fell far short of substantiating a full-time ministry as a vocation for appellant."

In other decisions upholding denial of the IV–D classification to a Jehovah's Witness who was not a regular pioneer minister, courts have clearly avoided deciding that such a registrant could properly be denied the classification if he showed that his religious teaching and preaching activity was his customary and regular vocation.[13]

In both *McCoy* and *Robertson*, the court relied on the position stated in 1958 by the general counsel for the Watchtower Society, already referred to, and set out in *Stidham* and *Tettenburn*.[14] We note from Stidham that in a 1959 letter, the general counsel took the broader position, in substance that, depending upon the circumstances in each case, a servant in congregation or a book study conductor is entitled to the exemption if he pursues his ministry as his vocation. The position of the Society is not controlling, but neither can it properly be said that Jehovah's Witnesses of less rank than pioneer ministers are not recognized by the Society as ministers.

In the case before us, appellant had made out a prima facie claim that his teaching and preaching as a Jehovah's Witness was his regular and customary

9. Application of Kanas (2d Cir., 1967), 385 F.2d 506, 509; Cantor and Musical Director of a Jewish congregation.

10. Wiggins v. United States (5th Cir., 1958), 261 F.2d 113.

11. (5th Cir., 1968), 403 F.2d 896.

12. (5th Cir., 1969), 417 F.2d 440.

13. In United States v. Tettenburn (D.Md., 1960), 186 F.Supp. 203, 206 it was said: "this court holds that in the absence of

engaging in full time ministry, a book study conductor is not a minister entitled to exemption * * *." In United States v. Stidham (W.D.Mo., 1965), 248 F.Supp. 822, 836, it was said, of a literature servant, "The record made by the defendant in this case did not even suggest that the 'customary vocation' that he 'regularly' followed was that of a minister, within the meaning of the Act."

14. *Supra*, fn. 5.

vocation, and we hold that the local board could not properly withdraw the IV–D classification solely because of its doubt that he was a pioneer minister.

The judgment is reversed and the cause remanded for entry of judgment of acquittal.