Stephan (NMI) **PARSONS**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 20684.

United States Court of Appeals, Eighth Circuit.

Aug. 27, 1971.

Charles T. Traw, Davenport, Iowa, for appellant.

Richard J. Barry, Asst. U. S. Atty., Des Moines, Iowa, Allen L. Donielson, U. S. Atty., Des Moines, Iowa, for appellee.

Before MATTHES, Chief Judge, GIBSON, Circuit Judge, and HENLEY.*

GIBSON, Circuit Judge.

Defendant Stephan Parsons, a Jehovah's Witness, was convicted in a jury trial of failure to report for civilian work as ordered by his draft board. The order was based on a I–O classification as a conscientious objector. Defendant was sentenced under the Federal Youth Corrections Act, 18 U.S.C. §§ 5010(a) and 5023(a), and was placed on probation for a period of 2½ years on the condition that he report for civilian work at a public hospital to be selected by the probation officer and be employed there for a period not to exceed two years. He is presently working at the Veteran's Hospital in Iowa City, Iowa, but has perfected his appeal, raising the issues herein discussed. We affirm the conviction.

---

* Chief Judge, United States District Court, Eastern District of Arkansas, sitting by designation.

Defendant registered with the Selective Service System on October 22, 1964, at Local Board No. 13–23, Clinton County, Iowa (hereinafter referred to as "Local Board"). He completed Form 150 in which he stated he joined the Ministerial School of the Jehovah's Witnesses in March 1957 and he participated in door-to-door ministry and attended large religious assemblies outside the State of Iowa. Based on these representations the defendant was classified I–O by his Local Board on December 15, 1964.

Subsequently, defendant enrolled in college and was classified II–S from March 8, 1966, to October 25, 1967, including renewals. On October 25, 1967, defendant was reclassified I–O as he was not making normal progress as a student.

On December 8, 1967, the Local Board received an SSS Form 127 from defendant on which he stated he was preparing for the ministry, and subsequently stated his intention to devote his energies to the ministry following the termination of his college enrollment, and requested a ministerial classification. On February 21, 1968, in response to the Board's December 28 request for a certificate for Pioneer Ministers, the defendant wrote the Board and enclosed a copy of his appointment as a Vacation Pioneer Minister for the period from February 1 to 14, 1968. Upon recommendation by State Headquarters, the Local Board classified defendant IV–D (minister of religion or divinity student) on February 28, 1968.

Eight months later, on November 5, the Board mailed defendant SSS Form 127, the current information questionnaire, and was informed that defendant had applied for a Vacation Pioneer appointment for the month of December. The Local Board reclassified defendant I–O on November 20, 1968, noting "Registrant is Vacation Pioneer, does not have full Pioneer status."

After being notified of his reclassification, defendant again requested a IV–D classification in his letter to the Local Board on December 20 and enclosed a copy of his appointment as a Vacation Pioneer Minister from December 1 to December 31 by the Watchtower Bible and Tract Society. He stated in his letter that he was serving "as an assistant servant of the congregation, thus taking the lead in the door-to-door ministry and directing a regular study of scriptural information." The Executive Clerk of the Local Board forwarded this information to the State Appeal Board without it being first reviewed by the Local Board. Based on defendant's file, the Clerk concluded that this new information would not affect the Board's decision. After considering the information supplied by defendant in his December 20 letter and enclosures and his file in a de novo appeal proceeding, the State Appeal Board classified defendant I–O on March 20, 1969.

Thereafter, on May 6, 1969, defendant's mother sent a letter to the Local Board advising them of her husband's death on April 22, 1968, and that defendant had "assumed the responsibilities of his father in providing for me." On May 16 defendant wrote a letter to the Local Board which substantiated these facts and requested a hardship deferment. Pursuant to the directions of State Headquarters, to whom defendant's file had been forwarded after his request for a hardship deferment, the Local Board sent defendant a dependency questionnaire, which he completed and returned on June 9. This questionnaire and defendant's letter of May 16 stated the following facts relevant to a III–A dependency classification: (1) defendant's mother, age 60, was alleged to be dependent upon defendant for support; (2) his mother had independent annual income of $1670 and owned a 60-acre farm on which $4200 of the original $8000 mortgage remained to be paid; (3) annual payments on the farm mortgage were a minimum of $300; (4) defendant's annual income was $2600; (5) defendant paid $75/month support to his mother ($900/year) and $120/month for

"insurances, auto loan, and misc. (fuel, repairs, tires, dept. stores)"; (6) defendant's brother, John L. Parsons, who was 21 and lived at home, was alleged to be unable to contribute to the support of his mother;[1] (7) defendant specifically claimed to be the sole support of his mother and to be totally responsible for her well-being and support.

Acting in accordance with a May 27 letter from State Headquarters,[2] the Local Board reviewed the new information furnished by defendant and decided not to reopen his classification since it concluded the classification was not to be changed.

On July 8, in accordance with 32 C.F.R. § 1660.20(b), the Local Board submitted to the registrant by letter three types of civilian work which it deemed appropriate for the registrant to perform in lieu of induction. By letter of July 22, the defendant refused to perform any of the three types of work submitted and asked for a personal appearance. On the same day, the Local Board sent a letter to the defendant scheduling a "courtesy interview" for July 30 with the Board. The letter added that "A representative from Iowa State Headquarters will also be present to discuss a civilian work assignment with you."

During the course of defendant's presentation of the facts surrounding his mother's dependency on him, one of the Local Board members advised him not to pursue his dependency claim but rather to pursue his ministerial claim. Subsequently, defendant asked the Board

whether his activity as a Minister of Jehovah's Witnesses would be considered work contributing to the national health, safety or interest, thus fulfilling his I–O obligation of civilian work to be performed in lieu of induction. When one of the Board members stated they would consider this request if defendant would obtain a letter from his congregation overseer stating his duties and activities as a minister, defendant testified that Colonel Fleischacker, from State Headquarters broke in and stated that this would be improper as only work in an institutional sort of place was intended. After the meeting the Local Board entered an order, effective upon approval by the National Director, directing that defendant be ordered to report for employment at Goodwill Industries in Des Moines, Iowa.

On August 27, 1969, the Local Board ordered defendant to report for his civilian duty at Goodwill Industries in Des Moines, Iowa. On September 8, the Board received a letter from defendant requesting a reconsideration of his classification and stating that he was serving as a Vacation Pioneer and would spend at least one hundred hours during September as a Vacation Pioneer. A copy of his appointment as a Vacation Pioneer for the month of September was also included. The Clerk of the Local Board sent this information and defendant's file to State Headquarters, which reviewed the file and returned it on September 11 with the advice that no reopening was warranted.

Thereafter, defendant did not report to Goodwill Industries as directed, and

1. Series III of the dependency questionnaire asks the registrant to check a box indicating either "yes" or "no" as to whether a particular relative can "contribute to support of claimed dependents?" The questionnaire then directs the registrant to state the extent of the relative's ability to contribute if "yes" is checked. The questionnaire does not ask the registrant to explain why a member of the family cannot contribute to the support of the dependent relative. At the end of the questionnaire space is provided for the

registrant to make a statement. Defendant made a brief statement but did not explain why his brother could not contribute to his mother's support.

2. The May 27 letter stated:
"When this new information is received, the local board should review it as provided in Section 1625.2 of the Selective Service Regulations but should not re-open the classification unless it is to be changed."

his indictment, prosecution and conviction followed.

Defendant first contends that there was no basis in fact for his reclassification from IV–D to I–O on November 20, 1968. He also contended that the reclassification violated 32 C.F.R. § 1625.2 which defendant interprets to state that once classified, a registrant cannot be reclassified except upon some facts not considered in granting the original classification which would justify a change in classification.

The Selective Service regulations require that a registrant be placed in class I–A (available for military service) unless he establishes to the satisfaction of the local board that he is entitled to a lower classification. 32 C.F.R. § 1622.-10. On February 28, 1968, the Local Board classified the defendant IV–D. Defendant served as a Vacation Pioneer Minister for February 1–14, 1968.

 We need not consider the question whether the board had power, on its own motion, to reopen and reconsider a classification where no new facts are before the Board. Facts not considered when the defendant was classified IV–D were present on November 20, 1968, when the Board reclassified the defendant I–O. During the eight months following his IV–D classification, defendant did not serve and there is nothing in his file to show that he sought to serve as a Vacation Pioneer. However, ten days after the Board mailed defendant a current information questionnaire, it received a letter stating that defendant had applied for a Vacation Pioneer appointment for the month of December. We think defendant's failure to make progress during this eight-month period towards achievement of Pioneer Minister status, one prerequisite of which is that one serve in Vacation Pioneer status for at least three months, provides a basis in fact for defendant's reclassification as I–O. It appears that defendant only applied for Vacation Pioneer activity at intermittent periods when he received a notice from his draft board.

In United States v. Chacon, 436 F.2d 411, 413 (5th Cir. 1971), the Fifth Circuit set out the test for IV–D classification:

"[T]he registrant bears the burden of clearly establishing that the religious affairs occupy a substantial part of his time and are carried on with regularity; that he is recognized by his organization as a minister and leader of a group of lesser members of the faith; and that the ministry is a vocation rather than an avocation."

The defendant in the instant case is situated similarly to the defendant in United States v. Goodman, 435 F.2d 306 (7th Cir. 1970). The following comments of the Seventh Circuit in *Goodman,* which held there was a basis in fact for refusing to grant a IV–D classification to the registrant, have equal application to the instant case:

"A review of his own statements down the years shows that, whatever his sincere aspirations for the future, his ministerial duties actually were only avocational and limited to those of a part-time helper. Even the material submitted after the order to report showed him to be about to engage in the duties of a Pioneer Minister for two weeks only. * * * Appellant in our case had been and evidently expected for an indefinite period to be engaged in full-time, secular employment. He did not demonstrate that the ministry was his customary vocation." *Id.* at 313.

On the classification questionnaire received by the Board on November 18, defendant listed his occupation as "construction labor (until termination of project)," and indicated he did the following kind of work—"cement finishing —general laborer—assist carpenter". Teaching was listed under "other occupational qualifications."

The testimony of the Board members indicates that they did not reclassify defendant I–O based on his "label" of Vacation Pioneer Minister alone, but rather determined defendant's actual duties and

functions within the church. The Board classified defendant IV–D from February 1968 until November 1968, during which time he did not hold the rank of Pioneer Minister, and only revoked defendant's IV–D classification because it concluded his ministry was an avocation rather than a vocation. *See* United States v. Hawver, 437 F.2d 850 (7th Cir. 1971).

The Court in *Hawver* held that when a prima facie case is presented, the local board cannot withdraw IV–D status solely because of its doubt that the registrant was a Pioneer Minister; but unlike Hawver, defendant in the instant case never claimed to be a Pioneer Minister and never furnished the Board any information as to how many hours per month he devoted to his ministry. We conclude that defendant failed to make out a prima facie case for a IV–D classification.[3] Furthermore, we think that even had defendant made out a prima facie case, a basis in fact for withdrawing defendant's IV–D classification has been demonstrated due to defendant's failure to make satisfactory progress toward achieving Pioneer Minister status. Defendant at most was entitled to IV–D classification only during early 1968 when he was serving as a Vacation Pioneer with an expressed goal of obtaining regular Pioneer status within a few months.

Following the Local Board's reclassification of defendant as I–O on November 20, 1968, the defendant had a right to a personal appearance and an administrative appeal under 32 C.F.R. § 1625.13. Defendant requested neither. However, on December 20 defendant wrote to the Board requesting that his classification be reconsidered and that he be reclassified IV–D. In addition to enclosing a copy of his appointment as a Vacation Pioneer for the month of December, defendant also stated he was regularly teaching the tenets of his religion, serving as an assistant servant of his congregation, directing scriptural studies, taking the lead in door-to-door ministry, using his home as a meeting place for one group, and preparing information for congregational instruction. The Board's Executive Secretary treated defendant's letter as a request for an appeal and forwarded the information to the State Appeal Board, and apparently it was not specifically considered by the Local Board.

Defendant argues that the actions of the Executive Secretary effectively denied him an opportunity to have his request considered by the Local Board, and that the failure of the Board to consider the new information submitted denied him the opportunity to have his case reopened.

In Mulloy v. United States, 398 U.S. 410, 416, 90 S.Ct. 1766, 26 L.Ed.2d 362 (1970), the Supreme Court held that the board must reopen if new determinative facts are alleged. No new or additional facts, not previously considered, were submitted.

■■ We think it was proper for the Local Board to treat defendant's letter as a notice of appeal. The regulations expressly state that ambiguities in such notices should be liberally construed in favor of the person filing the notice so as to permit an appeal. 32 C.F.R. § 1626.11(a). The subsequent classification by the State Appeal Board was de novo. 32 C.F.R. § 1626.26. Defendant has shown no prejudice in having his December 20 letter treated as a notice of appeal. Since we do not review actions of the Selective Service System which have not substantially prejudiced a registrant, United States v. Harris, 436 F.2d 775, 777 (9th Cir. 1970), we dismiss this claim of defendant's as frivolous.

---

3. *See also* United States v. Bittinger, 434 F.2d 49 (4th Cir. 1970). There the Fourth Circuit held that the registrant, who claimed to be only a Vacation Pioneer, did make out a prima facie IV–D claim, where he also alleged that he was devoting 30 hours a week or 100 hours a month to his ministry, not including apparently his conduction of bible studies in the homes of six families.

Defendant next contends that the order to report for civilian work was invalid because he was entitled to classification III–A (extreme hardship to a member of registrant's family). More specifically, he contends that the information furnished in his mother's letter of May 6, 1969, his letter of May 16, 1969, and his dependency questionnaire filed June 9, 1969, was sufficient to make out a prima facie case for a III–A deferment.

■ The critical question is whether the facts alleged by defendant, which are set forth in detail in the factual sketch earlier in this opinion, make out a prima facie III–A claim. We rejected defendant's contention that the procedural rights to a personal appearance and an appeal automatically flow from a de facto reopening in United States ex rel. Rasmussen v. Commanding Officer, 430 F.2d 832, 838–839 (8th Cir. 1970). *Contra,* United States v. Grier, 415 F.2d 1098 (4th Cir. 1969). We held in *Rasmussen* that a registrant's right to a personal appearance and an appeal is solely dependent upon his establishing a prima facie case for a new classification, regardless of whether a de facto reopening occurred.

■ Although not categorically stating, the Government implies that defendant's failure to claim a hardship deferment until over a year after the death of his father indicates that defendant's claim is a trumped-up one. This contention is not well taken since defendant's IV–D exemption, which defendant held until November 20, 1968, was a lower classification than III–A and the Board

could not have considered an application for a III–A classification at that time.[4] *See* United States v. Abbott, 425 F.2d 910, 915 (8th Cir. 1970). The appeal from defendant's November 20, 1968 reclassification was not resolved until March 20, 1969, when the State Appeal Board classified defendant I–O. Six weeks later the Board received Mrs. Parsons' letter stating she was dependent upon defendant for her support; defendant's letter expressly requesting a III–A deferment was received ten days thereafter.[5]

As noted in *Rasmussen,*

"A registrant establishes a prima facie case for a III–A classification by making nonfrivolous allegations of facts indicating 'not only that he makes a substantial financial contribution to a dependent listed in the regulation, but also that the dependent, if deprived thereof, would suffer extreme hardship.'" 430 F.2d at 836.

Consequently, for defendant to establish a prima facie case, it was necessary that he allege facts indicating that his mother was dependent upon him for support, that he was in fact making a substantial financial contribution towards her support, and that she would suffer extreme hardship if deprived of his support. *Id.* *Rasmussen* recognized that "the extreme hardship standard is obviously very general and that ultimate resolution of whether a prima facie III–A claim has been made out presents an ad hoc factual issue." *Id.* at 837.

■ We do not think the defendant's statement that he spent $75 a month towards his mother's support when she

---

4. The Selective Service regulations require that when grounds are established to place a registrant in one or more classes, he is to be classified in the lowest class. 32 C.F.R. § 1623.2.

5. 32 C.F.R. § 1625.1(b) provides that "[e]ach classified registrant * * * shall, within 10 days after it occurs, report to the local board in writing any fact that might result in the registrant being placed in a different classification such as, but not limited to, any change in his * * * dependency status

* * *." Although Williams v. United States, 203 F.2d 85, 88 (9th Cir.), cert. denied, 345 U.S. 1003, 73 S.Ct. 1149, 97 L.Ed. 1408 (1953), held that a registrant's failure to notify his local board of a change in his status within the time allowed constituted a waiver of any claim for deferment on the basis of such change in status, the Ninth Circuit has indicated that it would not apply such an absolute rule today. Petrie v. United States, 407 F.2d 267, 279 (9th Cir. 1969) (In Banc). *See also* United States v. Vincelli, 216 F.2d 681, 682 (2d Cir. 1954).

had an independent annual income of $1670 a year and owned a 60-acre farm on which there was a mortgage of $4200 was sufficient to show that his mother was dependent upon him for support and that she would suffer "extreme hardship" with his induction into civilian work. Having already been scheduled for preferential treatment of serving only in a civilian work capacity he would be in a better financial position than before to assist his mother. It is, therefore, difficult to perceive how his mother would suffer any "extreme hardship" from his induction under the I–O classification. His contentions in this regard are, therefore, frivolous and appear to be utilized for purposes of delay.

It is apparent that defendant wants no part of service in either the Armed Forces or in anything connected with the Selective Service System but he has the same obligation to serve as other men of his age. The Government has afforded him solicitous consideration of his beliefs and contentions and has extended to him procedural due process in every critical stage of his relationship with his Local Draft Board.

The judgment is affirmed.

Stevens, Circuit Judge, dissented and filed opinion.